ARLINGTON HOTEL COMPANY *v.* RECTOR.

## Opinion delivered April 17, 1916.

1. CONTRACTS—CONSTRUCTION—INTENTION OF PARTIES.—Legal contracts are to be interpreted in accordance with the intention of the parties making them.

2. CONTRACTS—CONSTRUCTION — INTENTION—CONSENT JUDGMENT—LIABILITY OF ASSIGN OR SUCCESSOR OF OBLIGOR.—A consent judgment was rendered against A. company, under the terms of which A. company was to pay to one R. a certain sum annually so long as A. company "or its successors or assigns shall continue in the possession of the aforesaid premises, or any part thereof, as aforesaid." The lease of A. company expired and a new company of the same name was organized, assuming all the debts of the old company, and taking a new lease from the lessor, the United States Government. *Held,* it was the intention of the parties to the consent judgment, that the successors of the old be liable for the amount of the judgment, and that the new company was liable on said judgment.

3. CORPORATIONS—EXPIRATION OF CHARTER—LIMIT OF EXISTENCE—Under the statutes, the time limit for the existence of a corporation rests primarily with the incorporators, and unless they specify a time in their articles of association the franchise continues indefinitely.

4. CORPORATIONS—RIGHTS OF DE FACTO CORPORATION.—A corporation *de facto* may sue and be sued, and, as a rule, do whatever a corporation *de jure* can do, and none but the State can call its existence in question.

5. CORPORATIONS—DEBTS—SURRENDER OF CHARTER.—The debts or liabilities of a corporation existing at the time of its dissolution are not extinguished thereby, and, in equity, they may be collected out of the assets of the defunct corporation in the hands of the shareholders, or any parties receiving the same, except innocent purchasers.

6. DEFINITIONS—"ASSIGN."—The definition of "assign" is "to make a right over to another, as to assign an estate, annuity, bond, etc., over to another."

7. CONTRACTS—PUBLIC POLICY—BURDEN.—Unless it is shown to the contrary, a consent judgment will not be held to contravene sound public policy.

Appeal from Garland Circuit Court; *Scott Wood,* Judge; affirmed.

### STATEMENT BY THE COURT.

On the 3d of March, 1892, the United States of America, through its Secretary of the Interior, acting under the authority of an act of Congress, executed its lease to S. H. Stitt & Co. (a firm composed of S. H. Stitt, Samuel W. Fordyce and Albert D. Gaines), demising the ground and premises upon which the Arlington Hotel, in the city of Hot Springs, was situated. The act of Congress provided that no lease should be for a longer period than twenty years. Among other things it prohibited an assignment of the lease without the approval of the government, and prescribed various terms with which the lessee had to comply, and provided for a forfeiture of the lease upon the failure of the lessee to observe these requirements. And in case of forfeiture, or at the expiration of the term of the lease, all the buildings and fixtures on the premises were to become the property of the United States.

The Government had the option, at the expiration of the lease, to execute another lease to the same party, or if it declined to do so, then the former lessee was to be given an opportunity to be remunerated for the improvements which he had put on the property during the term of the lease, the value of such improvements to be ascertained by a board of appraisers selected by the parties, and the sum fixed by the appraisers was to be paid to the first lessee by the second lessee before possession was taken by the latter, and if the second lessee declined to pay the amount, then the Government, at its option, could lease the premises to such parties as would agree to pay the amount and to observe the regulations fixed by the Secretary of the Interior concerning the use of the Government's property at Hot Springs.

The lease was in the standard form for leases at Hot Springs, following the requirements of the act of Congress for the Government Reservation at Hot Springs.

The Arlington Hotel Company was a corporation organized on the 30th day of March, 1892, under the laws of the State of Arkansas for the organization of manufacturing and business corporations. It was organized, as declared in its articles of association, "for the purpose of constructing a hotel and bath house at Hot Springs, Arkansas, and for the purpose of running and operating such hotel and bath house when constructed." It was to continue for twenty years. Among the incorporators were E. W. Rector, H. M. Rector, and H. M. Rector, Jr.

On the 11th day of June, 1892, S. H. Stitt & Company, with the approval of the Secretary of the Interior, assigned its lease to the Arlington Hotel Company. The Arlington Hotel Company occupied the premises during the full term of the lease. After the expiration of the lease in March, 1912, the Government that year executed three leases of ninety days each to the Arlington Hotel Company (the old company), and also another lease to it for the full period of twenty years.

In 1914 the Secretary of the Interior demanded that the officers of the Arlington Hotel Company furnish the Government with a certified copy of a new charter or an extension of the old one. Thereupon the Arlington Hotel Company—"the new company," was organized, having the same officers as the former company, which we will hereafter designate as the old company. The new company was formed for the purpose of obtaining and receiving a lease from the Government of the Arlington Hotel site. The operation of the Arlington Hotel was continued without interruption during the period between the expiration of the charter of the old company and the organization of the new company by the officers of the old company, apparently as if no change had occurred.

At a meeting of the stockholders of the new company the following resolution was adopted:

"*Whereas,* the old The Arlington Hotel Company has expired by limitation, and this corporation has been organized for the purpose of taking over all of the assets

of the former, The Arlington Hotel Company, and to continue the business of the old company; and

"*Whereas,* the old The Arlington Hotel Company has agreed to pass a resolution, authorizing and directing the conveyance of all of its assets, property and effects, real and personal, including all real estate owned and held by it in fee and by leasehold in Garland County, or in the city of Hot Springs, in said county, and to effect proper assignments, transfers and deeds to carry out that purpose, provided this company will assume all of the indebtedness of every kind of the old The Arlington Hotel Company, and will issue its full paid capital stock to each and all of the holders of the stock in the old The Arlington Hotel Company in exchange, share for share; and

"*Whereas,* It is desirable that this company shall accept the provisions of said resolution, and the transfer and conveyance therein provided;

"Now, therefore, Be it Resolved by the stockholders of Arlington Hotel Company: ·

"We do hereby agree that we will accept a conveyance and assignment of all of the property and effects whatsoever of the Arlington Hotel Company, and will assume each and every of its liabilities of every kind and character which are in existence at that date, and that upon said transfer and conveyance, Arlington Hotel Company will issue its full paid capital stock to the holders of the stock of The Arlington Hotel Company, in exchange share for share."

On the 18th day of April, 1914, the old company executed its conveyance, reciting that for the consideration of $500 of the full paid capital stock of the Arlington Hotel Company, "We hereby grant, bargain, sell and convey, set over and assign to the said Arlington Hotel Company, its successors and assigns, all our right, title, interest and estate of every kind and character in and to the assets of the Arlington Hotel Company, a corporation organized under the laws of the said State on the 6th day of February, 1892, and heretofore operating and con-

ducting the Arlington Hotel at the city of Hot Springs. This conveyance includes all our right, title and interest· in all the real estate owned by said corporation, either in fee or leasehold, which is situated in the city of Hot Springs, Garland County, Arkansas.''

In pursuance of the resolution the new company issued its stock to the former stockholders of the old company in exchange for their stock share for share.

The Government, on March 24, 1914, executed a lease to the new company, which contained, among others, the following recitals:

''Whereas, the period for which the Arlington Hotel Company of Hot Springs, Arkansas, was incorporated under the laws of the State of Arkansas, has terminated; and

''Whereas, the Arlington Hotel Company has again filed articles of agreement and incorporation, as required by the laws of the State of Arkansas, as is evidenced by the appended copy of certificate of the Secretary of State of Arkansas, dated March 21, 1914; and

''Whereas, by reason of the termination of the original corporate existence of the said Arlington Hotel Company, it is necessary and desirable that the contract entered into on December 24, 1912, between the Secretary of the Interior and said company for the leasing of a hotel site on the Hot Springs Reservation, Arkansas, be terminated, and said contract be and the same is hereby cancelled, such cancellation to be effective as of date of March 20, 1914; and

''Whereas, by reason of the reincorporation of the said Arlington Hotel Company as aforesaid, it is necessary and desirable that a new contract be entered into with said company for the use of the hotel site and the buildings thereon on the Hot Springs Reservation hereinafter described;

''Now, Therefore, This indenture, made and entered into this 24th day of March, 1914, by and between Lewis C. Laylin, Assistant Secretary of the Interior, for and on behalf of the United States of America, party of the

first part, and the Arlington Hotel Company, a corporation organized under the laws of the State of Arkansas, its successors and assigns, party of the second part.''

Following these recitals, embodied in the lease is a copy of the act of Congress under which the lease was executed. Rent was reserved at the rate of $10,000 per annum to and including the 21st day of March, 1917, ''and during each succeeding period of five years thereafter such sum as the Secretary of the Interior may determine.''

In June, 1906, E. W. Rector, as surviving executor of the will of H. M. Rector, deceased, in a case pending in the Garland circuit court against the old company, obtained, by consent, a judgment which recites in part as follows:

''It is agreed that the defendant will pay the plaintiff the sum of five thousand dollars in cash and six hundred dollars per annum on the first day of each year beginning on January 1, 1907, as long as the Arlington Hotel Company, or its successors or assigns shall continue to occupy the Arlington Hotel site, leased by the United States to S. H. Stitt & Co., for a term of twenty years by a lease dated March 3, 1892, embracing the grounds included in·said lease, or any part of said grounds, for the purpose of operating a hotel, or for any other purpose, as the lessee or lessees of the United States, or otherwise.

''And thereupon    *    *    *    it is considered, ordered and adjudged that the plaintiff have and recover of and from the defendant the sum of five thousand dollars, aforesaid, and the further sum of six hundred dollars per annum so long as the Arlington Hotel Company, or its successors or assigns shall continue in the possession of the aforesaid premises, or any part thereof, as aforesaid.''

E. W. Rector had been discharged as executor of the estate of H. M. Rector, deceased and he and others, as heirs at law of H. M. Rector, deceased, were the owners of the above judgment. They instituted this suit against

appellant for the sum of $600, which they alleged had accrued to them under the above agreement and judgment by reason of appellant's occupancy of the Arlington Hotel site in the city of Hot Springs, its assumption of the debts of the old company, and its failure to pay above sum when due.

Appellant, in its answer, denied that it was a corporation of the same name as the corporation referred to in the judgment mentioned, and denied that it was organized by all the stockholders and directors of such corporation, or that it agreed to discharge any of the obligations of the defunct corporation except debts existing at the date of its organization; that the lease and the charter life of the old corporation had expired and that appellant was not the same corporation, or its successors or assigns. It further set up that if the provisions of said judgment were upheld they would impose a burden upon the making of a lease by the United States Government, and for that reason would be contrary to and against the policy of the statutes of the United States authorizing leases to be made on the Hot Springs Reservation.

The above are the issues and the facts upon which the trial court, sitting as a jury, rendered the judgment against appellant in the sum of $600, from which this appeal has been duly prosecuted.

*Martin, Wootton & Martin* and *Rose, Hemingway, Cantrell, Loughborough & Miles*, for appellant.

1. The liability expired with the life of the old company, because (1) such was the intention of the parties (2) the company had no right to bind itself after its existence must terminate. (a) What did the parties intend? The hotel company was bound to pay only so long as it lived. 9 Cyc. 631; 6 J. J. Marshall 527; 48 N. E. 688; 59 Cal. 44.

(b) It was not within the power of the hotel company to bind itself on a continuing liability through an indefinite period of years beyond its corporate existence.

5 Thompson on Corp., § 5743; 28 Mo. App. 215; 10 So. 934.

2. The hotel site is not occupied by the old company, nor by its successors or assigns, and there is no liability within the terms of the compromise agreement or judgment. 2 Mor. on Corp., § 1005, 24; 2 *Id.*, § 1038, 1031; 5 Thomps. Corp., § § 6719, 6720-3.

3. The demand was not a liability of the new company, as it was not a liability of the old company which the new company promised to pay. 5 Thomps. on Corp., § 6743.

*Moore, Smith, Moore & Trieber,* for appellees.

1. The liability under the compromise judgment was not limited to the existence of the charter of the corporation or the term of the lease.

2. The new company assumed all the liabilities of the old company. 5 Thomps. on Corp. 6559; 163 U. S. 564; 118 Fed. 981; 194 U. S. 18; 132 Fed. 498; 64 *Id.* 628; 184 U. S. 368; 111 N. Y. 1; 123 *Id.* 242; 105 Ark. 421; 9 Ark. 463.

3. The corporation is bound by the judgment. 1 Herman on Estoppel, etc., § 288; 91 Ark. 376.

4. The defendant is liable; it stands in the shoes of the old company. 47 Ark. 318; 8 *Id.* 353; 53 Wis. 609; 35 Ark. 144, 365, 380; 62 *Id.* 229; 45 N. Y. 412; 51 *Id.* 235.

WOOD, J., (after stating the facts). (1) In *Wood v. Kelsey,* 90 Ark. 272-277, we said: "Courts may acquaint themselves with the persons and circumstances that are the subject of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described." See also, *Fort Smith Light & Trac. Co.* v. *Kelley,* 94 Ark. 461-471; *Ford Hardwood Lumber Co.* v. *Clement,* 97 Ark. 522-532; *Keopple* v. *National Wagon Stock Co.,* 104 Ark. 466; *Alf Bennett Lumber Co.* v. *Walnut Lake Cypress Co.,* 105 Ark. 421.

.It is an old and familiar rule that ''every legal contract is to be interpreted in accordance with the intention of the parties making it.'' *Paepcke-Leicht Lbr. Co.* v. *Talley,* 106 Ark. 400-411.

In arriving at the intention of the parties to a contract it must be considered as a whole, all of its parts being considered in order to determine the meaning of any particular part. No word should be treated as surplusage if any meaning can be given to it that is reasonable and consistent with the other words of the contract. *Railway* v. *Williams,* 53 Ark. 58-66; *Earl* v. *Harris,* 99 Ark. 112; *Phoenix Cement Sidewalk Co.* v. *Russellville Water & Light Co.,* 101 Ark. 22-27; *Yellow Jacket Mining Co.* v. *Tegarden,* 104 Ark. 573; *Pittsburg Steel Company* v. *Wood,* 109 Ark. 537.

I. Keeping in mind these elementary rules, did the parties to the contract evidenced by the consent judgment intend that the old company should pay the $600 per annum beginning with the first of January, 1907, only until the expiration of its charter, or during the term of the lease under which it held, or was it their intention that the old company should be liable for these payments as long as it or anyone deriving any interest in any way under it occupied the Arlington Hotel site even after its charter expired?

It was but little more than five years from January 1, 1907, the date when the first payment was to be made under the contract, until the charter of the old company would expire. The lease under which the old company held, expired a few months before the expiration of its charter. So the life of the old company and the leasehold estate under which the old company occupied the hotel site were not for coterminous periods. If it had been the intention of the parties to fix either one of these periods as the limit beyond which the liability of the old company should not extend, it seems reasonable that they would have named specifically one or the other of these periods, for these were definite and certain and but a few years in the future.

If the parties had really intended that the company should pay the sum of $600 per annum only for a definite period of a little more than five years, the most natural way to have expressed such intention would have been to fix the liability at an aggregate sum embracing that period, to be paid in annual payments; or, to designate the sum of $600 to be paid annually, beginning the first of January, 1907, and continuing until the charter or lease of the old company expired, naming the date. If the parties had contemplated that the liability of the old company should continue until its charter expired, then they could not have intended that its liability should cease with the termination of the lease under which it held; for, as we have seen, the time when the lease expired was a few months before the time of the expiration of the charter life of the old company. It is manifest that the lease from the United States to S. H. Stitt & Co. was mentioned simply for the purpose of designating the hotel site as the property constituting the subject-matter of the contract between them, and not for the purpose of fixing a definite time when the liability of the old company should end. If the purpose in mentioning the lease from the Government to S. H. Stitt & Co. had been to fix the time of the expiration of that lease as the time also when the liability of the old company to pay the annual sum named should cease, then the natural language would have been as follows: "As long as the Arlington Hotel Company, or its successors or assigns, shall continue to occupy the Arlington Hotel site under a lease by the United States to S. H. Stitt & Co. for a term of twenty years beginning March 3, 1892, and ending March 3, 1912." And doubtless the language "embracing the grounds included in said lease, or any part of said grounds, used for the purpose of operating the hotel, or for any other purposes, as the lessee or lessees of the United States or otherwise," would not have been added, because it was meaningless surplusage, and because the words "or for any other purposes" and "or otherwise" were entirely inconsistent with the theory

that the liability of the old company to pay $600 per annum ended when either the charter or the lease expired.

The consent judgment was doubtless drafted by the attorneys for the respective parties, and the court rendered the judgment in the language used to express their intention. The old company, its assigns or successors, could not have occupied the hotel site under its charter and the Stitt & Co. lease for any other purpose than operating a hotel. Under the charter and lease then existing the old company was holding only as a lessee of the United States government, and only for the purpose of operating a hotel. But the language, "or for any other purpose as the lessee or lessees of the United States or otherwise," shows that the parties contemplated that the old company or its successors or assigns might occupy the hotel site under lease from the Government for some other purpose than operating a hotel, and that the old company, its successors or assigns, might occupy the site as lessee under some other lessor than the Government.

The parties who framed the consent judgment knew of course when the old company's charter and the Stitt lease would expire; yet they used language which is absolutely incompatible with an intention to limit the annual payments to the time of the expiration of the charter or lease, and language which shows affirmatively that such was not the intention.

(2) We conclude therefore that the intention of the parties to this contract was that the old company should be liable for the sum of $600 per annum on the first day of each year, as stipulated, as long as the old company, or those who succeeded to its rights as assigns, or successors, continued to occupy the Arlington Hotel site, or any part of the grounds embraced in said site, for any purpose whatever, whether it was occupied under a lease from the United States or in any other manner, even though such occupancy continued beyond the life of the old company and the term of the Stitt lease. This construction is the correct one if effect is to be given to the language of the contract when considered as a whole, and

if any meaning is to be attached to many of the words which the parties used to express their intention. Any other construction would result in ignoring much of the language of the contract, and in treating some of the words in which the latter portion is couched as meaningless. This we can not do. Any other construction would also do violence to the familiar rule, that where the contract is ambiguous in its term the parties will be held bound to the construction which they themselves have placed upon it. *Hastings Industrial Co.* v. *Copeland,* 114 Ark. 415; *Clark* v. *J. R. Watkins Medical Co.,* 115 Ark. 166-176.

After the charter of the old company had expired in 1912 its officers and agents continued to occupy the Arlington Hotel site, accepting leases from the Government in the name of the old company, paying the sum named to Rector, and operating the hotel just as it had done before. And not until the Secretary of the Interior, some two years after the expiration of its charter, demanded that the charter be extended or renewed, did they take steps towards the organization of the new company, thus showing that it was the intention of the old company long after its charter had expired to continue to occupy and operate the hotel just as if its charter had not expired. This conduct upon the part of the old company shows that it was not its intention to treat its contract with Rector as at an end when its charter expired. The officers of the old company knew, when the charter expired, and if they had intended to treat the liability under the contract with Rector for payment of the $600 per annum as at an end when the charter expired it stands to reason that they then would have refused to pay and thus have repudiated the obligation.

II. It is a well settled principle in the interpretation of contracts that where parties contract for a service that is purely personal, or with reference to the continued existence of some particular thing constituting the subject matter of the contract, if the person dies or the thing ceases to exist, then the performance of the contract will

be excused because impossible. 9 Cyc. 631; Pollock's Principles of Contract, p. 362. See also *Collins* v. *Woodruff,* 9 Ark. 463.

Appellant invokes this rule, citing *Smith* v. *Preston,* 48 N. E. (Ill.) 688, and *Janin* v. *Browne,* 59 Cal. 44. But the rule has no application here because in the sense contemplated by the parties to the consent judgment, the old company did not die when its charter expired, but continued to exist in legal effect, at least, until the new company was organized. And because the occupancy of the Arlington Hotel site by the parties designated, which was the particular thing or subject matter of the contract between them, has not ceased. As we have seen, the parties to the contract intended that the Arlington Hotel site should be occupied by the old company or its succesor assigns for an indefinite period beyond the time of the expiration of its charter or the lease under which it then held.

(3)    In those jurisdictions where the law limits the existence of corporations to a certain period of time, the expiration of that period, *ipso facto,* would dissolve the corporation. But the general statutes under which business corporations are organized in this State do not limit the time of the existence of such corporations; nor do they require that any definite time for the existence of the corporation be specified in their articles of association declaring the purposes for which the corporation is formed. See Kirby's Digest, sections 837 to 845, inc. The time for the existence of a corporation therefore rests primarily with the incorporators, and unless they specify a time in their articles of association, the franchise continues indefinitely. Where the statutes limit the existence of a corporation to a certain period there could not be such a thing as a *de facto* corporation after the time limit. But such is not the case where the law of incorporation does not prescribe a time limit, even though a time limit may be specified by the incorporators themselves in their charter. See 2 Mor. on Corporations, section 1003; 7 R. C. L. 47-48, and cases cited in note.

(4) Mr. Morawetz, *supra,* says: "If the shareholders of the corporation should preserve the corporate organization, and continue the company's operations after the expiratin of their charter, the corporation would be a corporation *de facto* existing without legal right."

In R. C. L. *supra,* it is said: "A corporation *de facto* may legally do and perform every act and thing which the same entity could do or perform were it a *de jure* corporation. As to all the world except the paramount authority under which it acts, and from which it receives its charter, it occupies the same position as though in all respects valid."

The doctrine of our own court is: "That a corporation *de facto* can sue and be sued, and, as a rule, do whatever a corporation *de jure* can do, and none but the State can call its existence in question." *Whipple* v. *Tuxworth,* 81 Ark. 391.

The shareholders of the old company, after the expiration of its charter, continued the business of operating the hotel under leases from the Government just as it had done before until the organization of the new company. The old company, therefore, to all intents and purposes, had a corporate existence *de facto* up to that time. Likewise, the particular thing, the Arlington Hotel site, and the occupancy thereof, which was the subject-matter of the contract, had not ceased to exist. Furthermore, the payment of the annual sum provided for by the contract was not a purely personal service that could be performed only by the old company.

In *Janin* v. *Browne, supra,* cited by the appellant, it is held: "Where an executory contract is of a strictly personal nature, the death of a party by whom work is to be done before its completion determines the contract, unless what remains to be executed can certainly be done to the same purpose by another; but where the personal representative can fairly and sufficiently execute all that deceased could have done, he may do so and enforce the contract."

Concerning contracts and their obligations, that do not involve a purely personal service, and the liabilities created by breaches or nonperformance of those contracts, there is no distinction between the contracts of individuals and corporations. In other words, the debts of corporations and the debts of individuals are alike after the death of the debtor except as to the remedy for nonpayment.

(5) The debts or liabilities of a corporation existing at the time of its dissolution are not extinguished thereby, and, in equity, they may be collected out of the assets of the defunct corporation in the hands of the shareholders or any parties receiving the same except innocent purchasers without notice. *Jones, McDowell & Co. et al.* v. *Ark. Mechanical & Agricultural Co.*, 38 Ark. 17. See, also, *Worthen* v. *Griffith,* 59 Ark. 562-575; 2 Morw. on Corp., sections 1034, 1035; Woods Field on the Law of Corporations, section 442, *et seq.*

We conclude therefore, that if it was within the power of the old corporation to create a liability to Rector in the sum named as specified in the contract it was a continuing and existing liability at the time the new corporation was formed.

III. Was it within the power of the old company to create such liability?

The record does not disclose the nature of the claim that Rector was asserting against the old company. But the appellant does not challenge the consideration for the contract. We must assume, therefore, that whatever the nature and character of Rector's claim, it was entirely sufficient to justify the old company in agreeing to pay the amount specified according to the terms of the contract. It was certainly within the power of a corporation to settle by a consent judgment a lawsuit that was pending against it.

IV. The transactions set out in the statement which led to the organization of the new company and the taking over by it of all the assets of the old company, were

such as to constitute the new company a successor or assign of the old one.

After the expiration of the Stitt & Co. lease under which the old company held, and the expiration of its charter, it continued the business of operating the Arlington Hotel under precisely the same organization, and under lease from the Government, just as if its charter had not expired, under the same name and with the same officers and shareholders as it had done before. The officers and stockholders did not consider it necessary or advisable to take out a new charter. They had procured a lease from the Government for another term of twenty years and operated under that lease for a period of two years, when the Secretary of the Interior, having discovered that the time for the expiration of the charter of the old company had expired, demanded that the charter be renewed and extended. It was not until then that the shareholders of the old company took steps to organize a new company.

The new company was organized, as expressed in a resolution of its stockholders, "for the purpose of taking over all of the assets of the former, The Arlington Hotel Company," and to continue the business of the old company. To further this purpose, the shareholders of the old company passed a resolution authorizing its president to convey to the new company "all the assets, property and effects, real and personal," and to execute such deed of conveyance as may be necessary for vesting title to the property" in the new company. The resolution also provided that the consideration for these transfers was the assumption by the new company "of all indebtedness and liabilities of every kind" of the old company, and the agreement upon the part of the new company "to issue its full paid capital stock" to the holders of the stock of the old company "in exchange share for share."

The shareholders of the new company passed a resolution accepting the transfers "of the assets, property and effects, real and personal, including all real estate owned and held" by the old company "in fee or by lease-

hold'' in Garland County, in the city of Hot Springs, and agreeing to accept the transfers of the capital stock of its shareholders, and in consideration of all these transfers, the new company agreed to ''assume each and every of its liabilities of every kind and character which are in existence at that date, * * * and to issue its full paid capital stock to the shareholders'' of the old company ''in exchange share for share.''

The transfers were made in pursuance of these resolutions. The deed of the old company to the new recited, among other things, ''This conveyance includes all our right, title and interest in all the real estate owned by said corporation, either in fee or leasehold, which is situated in the city of Hot Springs, Garland County, Arkansas, or in said county.''

The lease executed by the Government to the new company, after setting forth that the period for which the old company was chartered had expired, recited that ''The Arlington Hotel Company has again filed articles of agreement and incorporation.'' And also set forth that, ''by reason of the reincorporation of the said Arlington Hotel Company aforesaid,'' etc. The lease executed by the Government, with change of date, was but a copy of the lease that had been executed to the old company.

It was the manifest intention of all the parties concerned in these transactions to substitute the new company for the old, and to make the new company a successor to the old. Treating the old company as a *de facto* corporation, the transfers as set forth above from it to the new company were sufficient to constitute the latter company an assign of the former in the ordinary and literal acceptation of that term.

(6) The definition of ''assign'' is, ''to make a right over to another, as to assign an estate, annuity, bond, etc., over to another.'' *Seventh National Bank* v. *Shenandoah Iron Co.*, 35 Fed. 436; *Richie* v. *Cralle*, 56 S. W. 963. 108 Ky. 483; Bouv. Law Dic.; Webster's Dic.; 1 Words & Phrases, p. 559.

Now, during all these transactions and before the lease was entered into with the new company, the old company, under the act of Congress, had the right to compensation for the improvements on the Arlington Hotel site. This was a property right of great value, of which the Government could not deprive it until an opportunity had been given the old company to have compensation for these improvements in the method provided by the act of Congress. No lease could be entered into with another party until the old company had had the opportunity for compensation. The old company had never received compensation for these improvements prior to the lease to the new company according to the method provided by the act of Congress. The old company waived this method and accepted its compensation in the transaction entered into with the new company which met with the approval of the Government as evidenced by its lease to the new company.

It would be most unreasonable to conclude that the old company, or its shareholders, would have surrendered its right to be compensated for its improvements without a satisfactory equivalent, which it received when the new company took over all of its assets, assumed all of its liabilities and issued to its shareholders the same amount of stock in the new company that they had in the old.

V.    The old company, in its contract with Rector made itself liable to pay annually the sum of $600 as long as it or its successors or assigns should continue to occupy the Arlington Hotel site. Appellant, the new company, as the successor of the old company, had occupied the Arlington Hotel site and was occupying the same at the time of the institution of this suit, and refused to pay the annual sum when it was due. Having taken over the assets of the old company under the arrangements above set forth, it would have been liable for the sum named even if there had been no express agreement upon its part to pay the same.

In *Hibernia* v. *St. Louis & N. O. Trans. Co.,* 13 Fed. 516, Judge Treat, speaking for the court, used this lan-

guage: "The facility with which new corporations are formed under local statutes to succeed to rights of property by transfer from the old corporations is to be considered, and such transfers are not to be held in equity destructive of prior and existing rights. A corporation with obligations determined or undetermined can not change its name or assume the form of a new corporation, and thus escape its obligations, or relieve the new corporation of the obligations of the old. * * * It is the duty of the court to examine the whole transaction, and to cut through mere paper transfers designed to obstruct or destroy the rights of parties. The evidence sufficiently discloses that the new corporation was a mere continuance of the old, with substantially the same parties in interest—a mere change of name. Whether that change, with attendant transfers, was designed or not to defeat all outstanding demands of the old corporation, it is evident that substantially the two corporations are the same, and that the new must respond to the obligations of the old. The evidence is clear enough that there was a hidden purpose in the change of corporate existence to escape possible liabilities which equity does not tolerate. A mere change of name can not avoid obligations. The new corporation took all the property of the old, went forward with its business, had the same stockholders, except a few formal ones, was, in short, the old corporation." See, also, *Blair v. H. & K. Ry.,* 22 Fed. 36; *Parsons Mfg. Co.* v. *Hamilton,* 73 Atl. (N. J.) 255, and other cases cited in appellant's brief.

The above language is appropriate to the facts of this record. True, it was used in equity proceedings, but that can make no difference, because, under the facts discovered by the agreed statement, although the appellee sued at law upon an express promise of appellant to assume the liabilities of the old company which inured to his benefit, he was nevertheless entitled to have the principles of equity applied in considering the facts and circumstances out of which the liability arose. *Organ* v. *Memphis & L. R. R. Co.,* 51 Ark. 235-259, and cases cited.

VI.   (7)   The facts presented do not show that the contract between Rector and the old company violated any principle set forth in the Constitution and laws of the United States or of this State, nor in the decisions of their courts.   These are the sources which must be consulted to determine an issue of public policy.   *Vidal* v. *Girard's Executors,* 2 How. 127-197; Elliott on Contracts, § 651 and note; *Hartford Fire Ins. Co.* v. *Chicago, etc., Ry. Co.,* 62 Fed. 904 s. c., affirmed 17 C. C. A. 62, 30 L. R. A. 193; Greenhood on Pub. Policy, p. 1, rule 2,note.   The burden as to this issue was on appellant.   *Hartford Fire Ins. Co.* v. *Chicago Ry. Co., supra.*   In the absence of proof to the contrary, we must assume that Rector was asserting a meritorious claim against the old company—one that presented a formidable obstacle to the operation of its hotel business—and that in order to remove it the old company was fully warranted in making the contract evidenced by the consent judgment.   There is nothing in the record to show that the public weal was in any manner injuriously affected by the contract between Rector and the old company.

Affirmed.

McCULLOCH, C. J. (Dissenting).   It ought not to be difficult to construe the language of a contract when its subject-matter, and the situation of the parties with respect thereto, are made perfectly clear.   In the present case there is no dispute on those points.   The Arlington Hotel Company was a corporation whose legal existence expired on a certain date, and it owned a leasehold estate for a period substantially co-extensive with its own legal existence.   The lease expired on March 3, 1912, and the franchise of the corporation expired on March 30, 1912.   The stipulation was that the corporation should pay to the plaintiff the sum of "six hundred dollars per annum on the first day of each year beginning on January 1, 1907, as long as the Arlington Hotel Company or its successors or assigns shall continue to occupy the Arlington Hotel site leased by the

United States to S. H. Stitt & Co. for a term of twenty years, by lease dated March 3, 1912," and it strains the meaning of that language very much to say that it constituted an agreement to pay beyond the period of the lease mentioned. The parties were, in other words, evidently contracting with reference to a certain leasehold estate then in existence, for the corporation did not have the legal right to occupy the premises for a longer period, and they are presumed to have had in contemplation only that particular term unless words be found in the contract clearly indicating the contrary intention. Nothing in the language used manifests an intention to the contrary.

There is also the presumption, if the language admits of it, that those acting for the corporation did not intend to contract for liability continuing beyond its own lifetime, for the obligation was personal to the corporation itself. They had no power to bind the "successors or assigns" of the corporation beyond the existence of the lease or of the corporation itself, therefore, the presumption should be indulged that they did not intend to do so. In fact, they did not, according to the express language of the contract, attempt to do that.

The case falls within the principle that "a man's contracts shall not be so strained as to be unreasonable, or that it was impossible to be so intended, without necessary words to make it such." *Singleton* v. *Carroll,* 6 J. J. Marshall 527. The opinion of the majority takes refuge behind the use of the word "successors" in addition to the word "assigns," as being indicative of an intention to extend the contract beyond the life of the corporation and of the lease then in existence, but even if those words can not be construed as interchangeable terms, with the same meaning, there is a proper use for the word "successors" without the implication contended for. Some person or other corporation could have become the successors of the lessee corporation during the period of the lease other-wise than by voluntary assignment of the lease, and the use of both terms is consistent with an intention to confine the operation of the contract to the conditions then ex-

isting. The United States Government had the option, at the expiration of the existing lease contract, to lease the premises to another lessee, and the Arlington Hotel Company did not even have a preferential right to a new lease. It was only to be protected to the extent of the value of its improvements. If the parties meant to extend the operation of the contract beyond the period of the existing lease, they could easily have expressed that intention by stipulating that the payments should be made as long as the premises should be occupied under that or any subsequent lease. They would not likely have stopped at the mention of that particular leasehold estate if they had intended to provide for further occupancy. The absence from the contract of any provision with reference to the procurement of a new charter at the expiration of the old, or the procurement of a new lease, shows that the parties did not have in contemplation the operation of the contract beyond the period of the existing franchise or lease. It was optional with the stockholders of the corporation whether they would attempt to renew the charter or to procure another lease, and there is nothing in the contract which requires them to do either, so an agreement to pay in the event the lease or the charter should be renewed and the premises occupied thereunder would be entirely lacking in mutuality, and is not presumed to have been within the contemplation of the parties in the absence of an express statement to that effect.

But if we attach the fullest significance to the use of the word "successors," there is no liability established in the present case for the reason that the new corporation is not the successor of the old one within the meaning of this contract. Conceding that it is the successor of the old corporation so far as concerns the rights of creditors of the latter, it does not follow that it is the successor of the old corporation within the meaning of this contract.

The new corporation did not succeed to any of the rights of the old corporation, so far as concerns the occupancy of the premises in question, for the new company did not take an assignment of the lease, but acquired all

of its rights under a new lease contract made with the Government more than two years after the franchise of the old corporation had expired and after the old lease had expired. The new company, it is true, took over the assets of the old company, but the leasehold estate had expired at that time, and was not a part of the assets of the old company. The new company also assumed and agreed to pay the indebtedness and liabilities of the old company, but if there was no agreement on the part of the old company to pay except during the occupancy of itself and those who should hold as its successors, then there was no liability on that score to assume.

I am of the opinion, therefore, that the majority of the judges have reached the wrong conclusion in this case, and am constrained to record my dissent.

Mr. Justice SMITH, concurs.