The Honorable Chris Thyer State Representative 326 South Church Street Jonesboro, AR 72401-2912
Dear Representative Thyer:
I am writing in response to your request for my opinion on two questions relating to the following reported facts:
 George W. Jackson Community Mental Health Center converted from a state agency to a private, not-for-profit corporation in 1997. This occurred during a time in which most community mental health centers were making such a conversion in response to changes in the state's approach to treating mentally ill residents. The new corporation became Northeast Arkansas Community Mental Health Center, d/b/a Med South Health Systems, Inc. ("MSHS"), formed under the Arkansas Nonprofit Corporation Act of 1993. Since the conversation [sic: "conversion"], MSHS has continued to function in the exact same capacity as it did during its time as a state agency.
 Pursuant to A.C.A. § 20-46-301(b), the State of Arkansas, through the Division of Mental Health Services, assists in the direction of mental health providers operating under the authority of the Division. MSHS operates in accordance with standards established by the Division and is subject to overall control by the Division.
 A.C.A. § 4-34-101, et [s]eq. authorizes the creation of rehabilitative services corporations for the purpose of "assist(ing) the state in carrying out specialized and regular rehabilitative services for Arkansans in need of rehabilitative services" (emphasis added).
 MSHS employs approximately 20 people who were vested in the Arkansas Public Employees Retirement System at the time the company structure changed from public to private. These employees are key managerial level staff members holding critical positions. Most of these employees have expressed a desire to return to state employment in order to maximize their retirement benefits. Losing these employees would cripple MSHS' efforts to assist the state in delivering quality mental health services as it has done for over 30 years, first as a state agency and now as a private organization.
Against this backdrop, you have posed two questions that I will paraphrase as follows:
 1. Would a corporation formed to employ various key managerial staff members of Northeast Arkansas Community Health Center, d/b/a Med South Health Systems, Inc. ("MSHS"), a private nonprofit corporation, qualify as a rehabilitative services corporation pursuant to A.C.A. § 4-34-101 et seq.?
 2. If so, would these employees qualify for participation in the Arkansas Public Employees Retirement System?
RESPONSE
With respect to your first question, you appear to be asking not whether MSHS might apply to the circuit court to convert from a private nonprofit corporation to a public rehabilitative services corporation, which it is authorized to do pursuant to A.C.A. § 4-34-105, but rather whether the key managerial staff of MSHS might themselves form a rehabilitative services corporation which would then presumably contract with MSHS to provide precisely the same services these individuals currently provide as MSHS employees. Assuming these individuals comply with the filing requirements prescribed in A.C.A. § 4-33-120, the Secretary of State as a purely ministerial act will indeed record the existence of a new rehabilitative services corporation. However, in my opinion, this proposal, which appears designed only to make a selected group of employees of a private corporation eligible to participate in the Arkansas Public Employees Retirement System ("APERS"), is in all likelihood inconsistent with the intent of the legislation authorizing the formation of rehabilitative services corporations. Section24-4-746 (Supp. 2005) of the Code directs APERS to provide coverage only pursuant to a "governmental plan" that will not jeopardize its tax-qualified status with the IRS. If, as seems likely, the IRS were to opine that the proposed arrangement is not truly governmental in nature, I believe APERS would be precluded from providing coverage.
With respect to your second question, even assuming the proposed corporation described in your request were deemed a "rehabilitative services corporation" for purposes of determining APERS eligibility, its employees would be eligible to participate in APERS only if they qualified as "employees" as that term is defined at A.C.A. § 24-4-101(17)(A)(i)(a) (Supp. 2005) and were not both retired from employment with a participating employer and already drawing benefits under APERS.
Question 1: Would a corporation formed to employ various keymanagerial staff members of Northeast Arkansas Community HealthCenter, d/b/a Med South Health Systems, Inc. ("MSHS"), a privatenonprofit corporation, qualify as a rehabilitative servicescorporation pursuant to A.C.A. § 4-34-101 et seq.?
I assume you are not asking whether MSHS itself might convert from a private nonprofit corporation to a rehabilitative services corporation pursuant to A.C.A. § 4-34-101 et seq., thereby becoming a "participating employer" for purposes of APERS coverage. See A.C.A. § 24-4-101(29)(C) (Supp. 2005). Rather, you appear to be asking whether what you call "key managerial staff members," in an effort to restore their previous participation in APERS, might separately form a rehabilitative services corporation, leaving MSHS to operate as a private nonprofit corporation.
As you note in your request, A.C.A. §§ 4-34-101 through — 107 (Repl. 2001) authorize, inter alia, the formation of "rehabilitative services corporations." Specifically, A.C.A. §4-34-101 provides:
 (a) There is authorized the creation of rehabilitative services corporations.
 (b) A rehabilitative services corporation shall be a public body and a body corporate and politic.
 (c) A rehabilitative services corporation shall be organized to assist the state in carrying out specialized and regular rehabilitative services for Arkansans in need of rehabilitative services.
Section 4-34-104 of the Code provides that one or more persons may form a rehabilitative services corporation in the manner dictated by the Arkansas Nonprofit Corporation Act of 1993, A.C.A. § 4-33-101 et seq. (Repl. 2001 Supp. 2005) (the "Act"). Section 4-34-105 further provides in pertinent part:
 (a) A corporation organized under the Arkansas Nonprofit Corporation Act of 1993, § 4-33-101 et seq., or the Arkansas Nonprofit Corporation Act, § 4-28-201 et seq., may convert to a corporation authorized by this chapter by filing with the circuit court of the county in which the main office or principal place of business of the corporation is located signed and verified articles of incorporation and a statement that the nonprofit corporation desires to convert to a corporation authorized by this chapter.
 (b) If the circuit court finds that the articles of incorporation conform to law and that the incorporation is for a lawful purpose and is in the best interests of the public, the court may issue an order approving conversion to a corporation authorized by this chapter.
In my opinion, assuming, as you have stated, that MSHS is currently organized as a nonprofit corporation pursuant to the Act, the corporation could presumably apply to convert to a rehabilitative services corporation pursuant to A.C.A. §4-34-105.[1] Indeed, my inquiries reveal that on at least two occasions, MSHS and APERS have exchanged correspondence regarding the possibility of effecting such a conversion.
However, your question appears to address the possibility that key staff members of MSHS, rather than applying to convert MSHS itself, might without court review apply to form a distinct rehabilitative services corporation pursuant to A.C.A. §4-34-104, which authorizes individuals to form a public corporation pursuant to the procedures set forth in the Act. Nothing in the Code provides that a court or any other entity needs to approve the formation of a nonprofit corporation under the Act. Subsection 4-33-125(a) (Repl. 2001) provides that so long as the corporate documents delivered to the Secretary of State for filing satisfy the formal conditions prescribed in A.C.A. § 4-33-120 (Repl. 2001), "the Secretary of State shall file it." Subsection 4-33-125(d) provides that "[t]he Secretary of State's duty to file documents under this section is ministerial."
In your factual recitation, you report that the individuals in question discontinued their participation in APERS when MSHS converted from a public agency to a private nonprofit corporation. Implicit in your request is a suggestion that a rehabilitative services corporation, as "a public body and a body corporate and politic," A.C.A. § 4-34-101(b), is a type of entity whose employees should properly be classified as "public" and hence eligible to participate in APERS. In general, I believe you are correct in making this suggestion. See A.C.A. §24-4-101(29)(C) (defining a public rehabilitative services corporation as a "participating public employer" for purposes of determining APERS eligibility). However, I believe there is something disingenuous in the suggestion that an existing private nonprofit corporation can in effect be partially staffed by the employees of a purported "public body and a body corporate and politic." I strongly doubt that the legislature had such an arrangement in mind when it authorized the formation of a rehabilitative service corporation, which I believe was intended to be an independent entity "organized to assist the state in carrying out specialized and regular rehabilitative services for Arkansans. . . ." A.C.A. § 4-34-101(c). In enacting A.C.A. §4-35-105, the legislature clearly contemplated the possible conversion of an entire private nonprofit corporation into a public rehabilitative services corporation. I see no evidence in the pertinent legislation that the General Assembly further intended to authorize a small group of employees of an entity that will remain a private nonprofit corporation, without changing any aspect of their employment, to reclassify themselves, and themselves only, as employees of a public rehabilitative corporation.
Notwithstanding my doubts about the propriety of the proposed incorporation, given that the only review would be to confirm that the application was correct in its form, it appears that MSHS staff members could indeed incorporate a "public body" pursuant to A.C.A. §§ 4-34-101 and -104. Although it seems strongly counterintuitive given that the current MSHS staff members would for all practical purposes continue to function as MSHS employees following the incorporation, no procedural barrier would preclude these individuals from forming a putative rehabilitative services corporation. As noted above, the Secretary of State's incorporation of an applicant under the Act is purely ministerial. Accordingly, so long as the staff members observed the formal application requirements for incorporation set forth at A.C.A. § 4-33-120, the Secretary of State would acknowledge their incorporation, presumably under the label of a "rehabilitative services corporation." Should this occur, the issue would be whether the APERS board would be obligated to characterize the new corporation as a "participating public employer" pursuant to A.C.A. § 24-4-101(29)(C), which includes within that category any "rehabilitative services corporation."
In my opinion, the answer to this question might well be dictated by A.C.A. § 24-4-746, which provides in pertinent part:
 . . . [T]he board shall not admit or retain any employer whose participation in the Arkansas Public Employees' Retirement System would jeopardize the tax-qualified status of the plan under the Internal Revenue Code or that would subject the plan to additional federal requirements, or to any other consequence that the board would determine to be detrimental to the system.
APERS' tax-qualified status hinges in part on its providing coverage only pursuant to a "governmental plan" within the meaning of section 414(d) of the Internal Revenue Code. My inquiries reveal that the APERS board would condition any decision to allow a rehabilitative services corporation to participate in APERS upon an IRS determination that the corporation was indeed sufficiently "public" in nature to warrant its participation in a "governmental plan."[2] In this regard, I will note that IRS Rev. Rul. 89-49, I.R.B. 1989-15, April 10, 1989, in declining to characterize as a "governmental plan" a volunteer fire department's retirement program, set forth the following standard to determine an entity's status, which I believe might apply to disqualify from APERS participation the unique rehabilitative services corporation contemplated in your request:
 Section 414(d) of the Code provides that a governmental plan means a plan established and maintained for its employees by the Government of the United States, by the government of any state or political subdivision thereof, or by any agency or instrumentality of any of the foregoing.
 A plan will not be considered a governmental plan merely because the sponsoring organization has a relationship with a governmental unit or some quasi-governmental power. One of the most important factors to be considered in determining whether an organization is an agency or instrumentality of the United States or any state or political subdivision is the degree of control that the federal or state government has over the organization's everyday operations. Other factors include: (1) whether there is specific legislation creating the organization; (2) the source of funds for the organization; (3) the manner in which the organization's trustees or operating board are selected; and (4) whether the applicable governmental unit considers the employees of the organization to be employees of the applicable governmental unit. Although all of the above factors are considered in determining whether an organization is an agency of a government, the mere satisfaction of one or all of the factors is not necessarily determinative.
In the present case, I am struck by the fact that the state would apparently have no control whatsoever over the "everday operations" of the newly formed rehabilitative services corporation; indeed, it appears questionable that the corporation would have any "everyday operations" other than its employees' activities as de facto employees of a private nonprofit corporation — a private entity that, in turn, although subject to monitoring by the Division of Mental Health Services of the Department of Health and Human Services, is involved in a purely contractual relationship with the state. Under these circumstances, I believe both the IRS and a reviewing court might have significant concerns of the sort that prompted the supreme court in Chandler to strike legislation declaring the ATA and the AEA public in a way that authorized their participation in the State Teacher Retirement System. See discussion in n. 1,supra.
If the IRS voiced no objections, the question would remain whether the APERS board, pursuant to A.C.A. § 24-4-746, might nevertheless disallow the proposed participation based on a conclusion the arrangement would prove "detrimental to the system." Although the board might be inclined to do so based upon the element of artifice that appears to underlie this proposal, I question whether any such conclusion alone would warrant the board's denying the newly formed corporation's participation in APERS. Whether wisely or not, state law permits the formation of a "rehabilitative services corporation" without any review to determine whether that label is accurate. State law further defines a "rehabilitative services corporation" as a "participating public employer." A.C.A. § 24-4-101(29)(C). For the board to deny the newly formed corporation the right to participate in APERS might be viewed as tantamount to questioning the corporation's legal status — an action that can be undertaken only by the state in a legal proceeding. See Cairo T. S.R. Co.v. Arkansas Short Line, 172 Ark. 317, 288 S.W. 715 (1926);Arlington Hotel Co. v. Rector, 124 Ark. 90, 186 S.W. 622
(1916).
Finally, as discussed below, even if the proposed corporation were deemed to be a "participating public employee" for purposes of determining APERS eligibility, a factual question would remain regarding whether the staff members qualify as covered "employees" as that term is defined at 24-4-101(17)(A)(i)(a).
Question 2: If so, would these employees qualify forparticipation in the Arkansas Public Employees RetirementSystem?
The statutory definition of covered "employees" provides in pertinent part:
 (17)(A)(i)(a) "Employees" means all officers and employees of any office, agency, board, commission, including the Department of Higher Education, or department of a public employer whose compensations were or are payable from funds appropriated by the public employer and all otherwise eligible employees whose compensations were or are payable in whole or part from federal funds, as well as the official court reporters and stenographers of the circuit and chancery courts of the state and all of the prosecuting attorneys of the judicial districts of Arkansas.
A.C.A. § 24-4-101(17)(A)(i)(a). The question of whether salaries are "payable from funds appropriated by the public employer" or "payable in whole or part from federal funds" is clearly one of fact to be addressed by the APERS board. In this regard, A.C.A. § 24-4-101(17)(C) provides:
 In case of doubt as to who is an employee within the meaning of this act, the board shall have the final power to decide the question[.]
Even if the board determines that the newly formed corporation qualifies as a participating public employer staffed by "employees" as just defined, it would remain to be determined whether any of the employees are currently drawing retirement benefits based upon their previous employment by the state. As discussed in Ark. Op. Att'y Gen. No. 2005-035, it is generally impermissible to rejoin a retirement system upon reemployment after one has retired and begun to draw benefits. As I noted in my previous opinion:
 The act of rejoining a retirement system after retirement is widely regarded in most retirement systems as impermissible unless expressly authorized by statute. See Op. Att'y Gen. 98-303. As noted by one of my predecessors, "[t]he rationale behind the legislature's declining to make such a provision is clear: To allow a retiree to draw benefits while earning further credited service upon which to calculate further benefits would, in essence, amount to `double-dipping' and would create an unwarranted burden on the retirement system." Op. Att'y Gen. 98-303. The Arkansas General Assembly apparently has authorized rejoining after retirement in only one retirement system — local fire pension funds. See
A.C.A. § 24-11-827. (It should be noted that under that statute, the retiree's benefits cease during the period of re-employment.) Accordingly, the retired mayor under your questions would not be permitted to rejoin the retirement system and earn further years of credited service while drawing retirement benefits. Accord Op. Att'y Gen. Nos. 98-162; 96-303; 96-212.
This principle is currently codified at A.C.A. § 24-4-304(b)(1) (Supp. 2005), which provides that "[u]pon a member's retirement, he or she shall cease to be a member." Subsection (a)(2) of this statute provides that if a person is not retired and becomes reemployed in a position covered by the system, he or she must rejoin the system.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] In Ark. Op. Att'y Gen. No. 1999-277, one of my predecessors addressed the question of whether the employees of an "habilitative services corporation," which, pursuant to A.C.A. §4-34-102(b) (Repl. 2001), is likewise designated "a public body and a body corporate and politic," might be eligible to receive benefits under APERS. In the course of that opinion, my predecessor offered the following analysis of the General Assembly's authorizing the transformation of what had been a private nonprofit corporation into a public corporation:
 A.C.A. § 4-34-102 defines as "public bodies" institutions whose contractual dealings with the state appear to have a decidedly "private" flavor and which will continue to be treated as private corporations unless they observe the mere formality of filing for conversion. All statutes are presumed constitutional, Stone v. State, 254 Ark. 1011, 498 S.W.2d 634 (1973), and if it is possible to construe an act as constitutional, a court not only may, but should and will do so. Love v. Hill, 297 Ark. 96, 759 S.W.2d 550 (1988). Although I am assuming the constitutionality of the statute in this Opinion, this legislation may be assailable on constitutional grounds if a court, after reviewing facts not before me, were to conclude that habilitative services corporations are de facto private, notwithstanding their statutory designation as public. In Chandler v. Board of Trustees of the Arkansas Teacher Retirement System of the State of Arkansas, 236 Ark. 256, 365 S.W.2d 447 (1963), the Arkansas Supreme Court declared unconstitutional several statutes that permitted employees of the Arkansas Education Association (the AEA) and the Arkansas Teacher Association (the ATA) to participate in the State Teacher Retirement System. The Court concluded that the AEA and the ATA were private organizations, rather than agencies of the state, and that any use of tax dollars to fund its members' retirement offended the Arkansas Constitution's privileges and immunities clause (art. 14, § 3), the illegal exaction clause (art. 16, § 13) and the due process clause (art. 2, § 8).
I agree in all respects with this analysis and believe it applies equally to the legislation authorizing the formation of rehabilitative services corporations.
[2] I am informed that APERS has on one occasion permitted a rehabilitative services corporation to participate in APERS. It appears that the board inadvertently approved this participation without first obtaining an IRS letter opinion regarding what would be the effect upon APERS' tax-qualified status. After allowing the rehabilitative services corporation to participate, the board reportedly sought the IRS' opinion on this matter. Six years later, the IRS has yet to render its opinion.