# CASES DETERMINED

### IN THE

# SUPREME COURT OF ARKANSAS

---

### WHITTAKER *v.* HOLMES.

## Opinion delivered April 28, 1924.

1. LANDLORD AND TENANT—CONSTRUCTION OF LEASE.—Any doubt as to the meaning of a lease prepared by the lessor must be resolved against her.

2. EVIDENCE—PAROL EVIDENCE TO EXPLAIN AMBIGUITY.—In an action on a lease, parol evidence is admissible to prove the real consideration where the contract is ambiguous.

3. EVIDENCE—PAROL EVIDENCE TO EXPLAIN CONSIDERATION.—Where a lease provided for the erection of a building on the premises by the lessor, and for the rent to begin on its completion, parol testimony was admissible to prove that the real consideration for the lease was the use of the building.

4. LANDLORD AND TENANT—CONSIDERATION OF LEASE—EVIDENCE.—In an action for rent where the building leased had been destroyed by fire, evidence *held* to sustain a finding that the sole consideration for the payment of the rent was the occupancy of the building.

5. LANDLORD AND TENANT—DESTRUCTION OF BUILDING—LIABILITY FOR RENT.—Where a lease contract was entered into with reference solely to a store building, and not with reference to the land on which it was situated, upon the destruction of the building and the lessor's failure to rebuild, the lessee was discharged from liability to pay rent.

Appeal from Independence Circuit Court; *Dene H. Coleman,* Judge; affirmed.

*Ernest Neill,* for appellant.

There being no allegation of mistake or fraud or overreaching in the procurement of the written contract, there being no uncertainty or ambiguity in its meaning and intent, and appellees having admitted its execution,

they are bound by its terms, and are estopped from alleging a contract different in terms. 129 Ark. 513; 130 Ark. 197; 144 Ark. 279; 133 Ark. 105. It was the duty of the court to construe the contract from its written terms and recitals alone. 146 Ark. 127; 131 Ark. 144; 130 Ark. 381; 131 Ark. 585. This court has long since settled the law as to the effect upon a lease covering building and grounds, where the building is destroyed. 25 Ark. 441; 99 Ark. 193. The common-law rule, so far as applicable to or consistent with our form of government, is a part of the statutory law of this State, and the court is without power to engraft a different rule by judicial declaration. 16 R. C. L. 465, 956; *Id.* 466, 958; *Id.* 468, 959. The allegation as to surrender of possession to appellant falls far short of what is necessary to constitute a legal defense. In order to create a presumption of acceptance, the averment must show that the alleged acts of entry, possession or control were of such character, and done in such manner, as to appear on their face as hostile and inconsistent with the relation of landlord and tenant between appellant and appellee, and that the latter relied upon such acts as indicating an acceptance by the former. 4 Phila. 57, 69 Pa. St. 316; 1 Daly, 485; Woods on Landlord and Tenant, 844; 71 Ark. 254; 24 Cyc. 1373; 16 R. C. L. 674, 675.

*W. M. Thompson* and *McCaleb & McCaleb,* for appellees.

The lease itself makes the erection of the building a condition precedent to the commencement of the lease. The implied covenant that the lease carries with it makes it incumbent upon appellant to rebuild, after the destruction of the building, before asking payment of rents. An offer to rebuild was not sufficient. The case comes within the exception to the general rule announced in *Buerger* v. *Boyd,* 25 Ark. 441.

WOOD, J. This action was instituted by the appellant against the appellee, Clarence P. Holmes, to recover a balance alleged to be due under a lease contract. The appellant set up in her complaint a certain lease contract

entered into between the appellant and Clarence P. Holmes, and alleged that C. P. Holmes was due her on said contract the sum of $420 as unpaid rent; that the appellees, J. A. Holmes and G. E. Yeatman, were sureties of C. P. Holmes for the payment of this rent. She alleged that she had demanded payment of the balance due, both of principal and his sureties, which they had refused to pay. The lease and bond were made exhibits to the complaint.

The appellees, in their answer, admitted the execution of the contract and bond sued on, and, by way of affirmative defense, they alleged that in April, 1922, C. P. Holmes was desirous of engaging in the retail grocery business in the city of Batesville, Arkansas, and made a contract with the appellant, under the terms of which it was agreed that, if she should erect a store building, of the dimensions set out in the lease, upon certain lands therein described, he would lease same for the period of two years from the 12th of May, 1921, which will be thirty days from the date of the contract, and that he would pay as a rental for said building the sum of $30 per month. They alleged that it was agreed that plaintiff would erect and maintain the building and place Holmes in possession thereof within thirty days from the date of the contract; that the sole and only consideration for entering into said contract on the part of Holmes was the erection of said building by the plaintiff and the right to said Holmes to occupy and use same as a storehouse; that on the ____ day of May, 1921, Holmes entered into possession of the store building which had been erected by plaintiff pursuant to said contract, and continued to occupy the same until it was destroyed by fire in December, 1921; that the plaintiff soon thereafter collected the insurance upon the building, but failed to erect another building of like dimensions for the use of Holmes on the premises; that Holmes never at any time used or occupied any part of the real estate mentioned in the lease contract except that on which the building stood, and that the real estate outside of this building

was without any value whatever to Holmes. The defendants therefore pleaded a failure of consideration. They further set up that, shortly after the destruction of the building as alleged, the plaintiff, by her agents, took possession of the premises and exercised control over the same, and neither C. P. Holmes nor either of the other defendants had been in possession or had any control over said premises since the destruction of the building by fire; that C. P. Holmes had paid all the rent due the plaintiff up to that time. They therefore denied that they were indebted to the plaintiff in the sum of $420 or in any sum. The cause was, by consent, submitted to the court sitting as a jury, and the court found the facts to be as follows:

First: That the plaintiff, Mrs. Ruby Whittaker, and the defendant, Clarence P. Holmes, entered into a written contract of lease, referred to in the evidence and made "Exhibit A" to plaintiff's complaint, and that the defendants executed the written guaranty or bond for the payment of rents introduced in evidence, and made "Exhibit B" to plaintiff's complaint.

Second: That the defendant Holmes entered into the possession of the store building erected under the terms of said written contract, taking possession on May 16, 1921; that he and his subtenant, Kent, occupied said store building until December 16, 1921, and that at that time said building was destroyed by fire.

Third: That the defendant Holmes paid to the plaintiff the rent in full for the time the building was so occupied.

Fourth: That, under the terms of said contract of lease, the sole purpose of its execution by the parties hereto and the consideration therefor were the procuring of the erection of said building and its use and occupancy by the defendant Holmes and the payment of the rental therefor to the plaintiff, Mrs. Whittaker, and that, except for the erection of said building and its use and occupancy as a grocery store, the defendant Holmes would not have made said contract.

The court declared the law to be that, "upon the destruction of said building by fire, the defendant had the right to terminate the contract on his part." The court thereupon entered judgment in favor of the defendants, from which is this appeal.

The facts as found by the court in the first, second, and third findings of fact are undisputed, and the only real issue in the case is whether or not the court erred in its fourth finding of fact, and the correctness of its finding depends upon the construction that should be given the contract when viewed in the light of the situation of the parties to it, as shown by the testimony adduced to sustain the respective contentions.

The lease contract is as follows: "The said Mrs. Whittaker has this day leased unto said Holmes, for and during the period of two years from the date hereinafter mentioned, one certain lot or parcel of ground situated in what is now known as Bates' addition to the city of Batesville, and being in a large unnumbered block lying adjacent to and on the south side of Harrison Street, and just south of the intersection of Fourth Street, said parcel of ground fronting 16 feet on Harrison Street and running back towards Bates Street a distance of about 100 feet to the woven wire partition fence, and said parcel being on the west side of a driveway from said Harrison Street. The terms and conditions of this lease are as follows, to-wit: The said Mrs. Whittaker is to erect upon said leased parcel of ground a one-story box store building, 16 feet in width and 30 feet in length, with a glass front, the walls to be canvassed and papered, and the ceiling painted, and to provide said building with one counter and one section of shelving 16 feet long, as per sketch furnished by the said Holmes; the building to have also a shed porch in front and a brick flue, and to be provided with electric wiring, but not with plumbing or sewer connections. The work of constructing said building to be commenced within one week from the date hereof and to be completed within thirty days thereafter and as soon as practicable, and the time of the commence-

ment of this lease shall date from the date upon' which' said building is completed and ready for occupancy. The said Holmes, on his part, agrees and binds himself to pay, during the entire period of this lease, as rental for said building and premises, the sum of $30 per month, due and payable monthly in advance, and further agrees to give security for the payment of such sums. Said Holmes further agrees and binds himself to take good care of said leased premises and property, and turn the same back to the said Mrs. Whittaker, at the end of this lease, without notice, unless such lease shall be renewed by mutual agreement of the parties.''

The bond is as follows: ''Know all men by these presents: That we, Clarence P. Holmes, as principal, and J. A. Holmes and G. E. Yeatman, as sureties, are held and firmly bound unto Mrs. Whittaker in the sum of $720 for the just and faithful payment of which we bind ourselves, our heirs, executors and assigns firmly by these presents. The conditions of the above obligation are as follows, viz: Whereas, the said Clarence P. Holmes has leased of and from the said Mrs. Ruby Whittaker a certain lot or parcel of ground in the city of Batesville, upon which is to be erected, for his use and occupancy, a store building, and is to pay to the said Mrs. Whittaker, as rental therefor, the sum of $30 per month during a period of two years, such rental to be paid monthly in advance, the terms and conditions of which lease are set forth on the paper hereunto annexed. Now, if the said Clarence P. Holmes shall well and truly fulfill the obligations set forth in said lease contract, this writing is to be null and void, otherwise to be and remain in full force and effect. Signed by the parties on April 12, 1921.''

The appellant testified that C. P. Holmes paid the rent from the time that he took possession of the property on May 15 to the 15th of December. He had not paid any rent since then, and owed from that time up to the bringing of the suit. There was not any building on the ground at the time she rented same to Holmes.

She agreed to erect a building for him for the purpose of his business, and it was on this basis that the contract was made. After the building was destroyed by fire she did not make any proposition to Holmes to rebuild. He never asked her to. She wanted to rebuild, and expected to, and for Holmes to continue. She thought she had to rebuild in order to make herself safe. She authorized her husband to act as her agent in all the negotiations with Holmes after the fire.

Whittaker testified that he acted as the agent of his wife, the appellant, in the matter of leasing to Holmes, of having the premises cleaned up and in the matter of settling the fire loss with the insurance company. Witness had the premises cleaned up about four months after the fire. The reason he did this was because he had been notified by the board of health of the city that the premises were unsanitary. At this time the insurance company had settled the fire loss. Witness testified that he had corresponded with C. P. Holmes in regard to the rent, and he exhibited copies of the letters which he had sent to C. P. Holmes, and also a copy of the letter which he had received from J. A. Holmes, father of C. P. Holmes, and his reply to same. He testified that, after this correspondence, he had a meeting with C. P. Holmes, at which Holmes presented him with a copy of a letter he had mailed to witness the night before, which letter was introduced. At that meeting witness made Holmes the proposition to allow him the use of the house for as much time, without rent, as he had lost on account of the fire; that if Holmes would say he had lost six months' use of the building, then his lease would be extended six months without further payment. Holmes stated that he did not want the use of the building, and did not want the same erected, and refused to consider the proposition. Witness stated to Holmes that his wife was under no obligation to make such a proposition, but that she did not want to take advantage of Holmes if he was inclined to carry out the contract. After he gave it up and turned it over to other parties, he tried to get the appellant to

release him from the contract and accept another party in his place, but appellant declined to do so. Witness made it plain to Holmes that the proposition to rebuild was conditioned upon his paying the rent, and he declined the proposition.

It is unnecessary to set out the correspondence referred to by the witness. It was to the effect that the appellant, through her husband as agent, wrote C. P. Holmes as early as January 1, 1922, after the fire, stating that it was her intention to rebuild the store after she got her money from the insurance company, and expected to carry out the contract with Holmes, and urging him to pay the rent. He claimed that he did not receive this letter. Then, after a period of nearly three months, she wrote, reminding him that he had not paid the rent, and urging him to do so, and stating that she intended to carry out the contract. Holmes, in reply, stated, in effect, that he considered the contract at an end by the destruction of the store, and that he did not consider that he was bound to pay the rent after the building was destroyed.

In *Bracy Hdw. Co.* v. *Herman-McCain Const. Co.*, 163 Ark. 133, we said: "The contract, which is the foundation of appellant's action, was written by the appellant, and therefore, under a familiar rule of law, if any of its terms are ambiguous so that it becomes necessary to construe it, parol evidence may be admitted to throw light upon the meaning of the contract. Where there is doubt as to the meaning of the contract, such doubt must be resolved against the party who prepared the contract. *Wis. & Ark. Lbr. Co.* v. *Fitzhugh,* 151 Ark. 81, and cases there cited."

The contract upon which the appellant predicates her action was prepared by the appellant, and is governed by the above rule. The first part of the first paragraph of the contract is free from ambiguity, in that it expressly recites that the appellant had leased to Holmes one certain lot or parcel of ground, but the concluding part of this paragraph recites that "the terms and conditions of the lease are as follows." Then the next para-

graph contains these terms and conditions, which are, in substance, that appellant was to erect a building of a certain description and Holmes was to begin to pay rental for the building and premises at the rate of $30 per month in advance, the payment of rental not to begin until the building was completed, which was to be within thirty days.

The bond executed by Holmes and his sureties for the performance of the contract also recites that Holmes had leased a certain lot or parcel of ground "upon which is to be erected for his use and occupancy a store building." There is sufficient ambiguity as to the real consideration of this contract to warrant the introduction of oral testimony. When the lease and bond are considered in the light of this testimony, we are convinced that the court correctly construed the contract, and did not err in finding that "the considerations therefor were the procuring of the erection of said building and its use and occupancy by the defendant Holmes and the payment of the rental therefor to Mrs. Whittaker," and that, "except for the erection of the building and its use and occupancy as a grocery store, the defendant Holmes would not have made said contract."

The general rule undoubtedly is as announced in *Buerger* v. *Boyd*, 25 Ark. 441, where we said: "We understand the law to be that, where a lessee takes an interest in the soil upon which a building stands, and the building should be destroyed by fire, he will be held for the rent of the entire property, unless he stipulates against casualties." In that case it was admitted that the lessee not only leased the house, but that he leased part of lots Nos. 11 and 12, in block 34, in Little Rock. In the case at bar there is no admission upon the part of the lessee that he leased anything more than the store building, but, on the contrary, the testimony of Holmes is direct and positive to the effect that he did not use any part of the lot upon which the building stood not covered by the building. He did not pay any rent after the build-

ing was destroyed because he did not feel that he owed it after the building was destroyed.

In the case of *Buerger* v. *Boyd, supra,* we also said: "If one simply leases the house or room, and acquires no control over or interest in the soil, and the building be destroyed, we understand the rule to be otherwise." We are convinced that the facts of this record show that the consideration of the lease under review was for the store building, and the store building alone. When the building therefore was destroyed by fire, the consideration for the contract failed, and the appellee Holmes was no longer obligated to pay rent on the premises.

The facts of this record certainly justified the trial court in finding that the parties to this contract were contracting with reference solely to the store building. It gave the contract its only value and consideration to the appellee, C. P. Holmes, and appellant knew that when she entered into the lease, and she contracted with reference to such fact. "In all contracts in which the performance depends on the continued existence of a given person or thing, a condition is implied that the impossibility arising from the perishing of the person or thing shall excuse the performance. In none of the cases is the promise in words other than positive, nor is there any express stipulation that the destruction of the person or thing shall excuse the performance, but that excuse is by law implied, because, from the nature of the contract, it is apparent that the parties contracted on the basis of the continued existence of the particular person or chattel." 6 R. C. L., p. 1005, § 369, and cases cited in note; 13 C. J. 643, § 718, and cases cited in note. See also *Collins* v. *Woodruff,* 9 Ark. 463; *Arlington Hotel Co.* v. *Rector,* 124 Ark. 90, 101, 102.

The judgment of the trial court is correct, and it is therefore affirmed.

### DISSENTING OPINION.

McCULLOCH, C. J. The rule at common law, with respect to liability of a tenant after destruction of the leased building, was stated and adopted by this court in

*Buerger* v. *Boyd,* 25 Ark. 441. The majority now adhere to it as an established rule of property in this State. I fail to discover any ambiguity in the contract. It is clearly one for the lease of real estate for a fixed period, together with the building to be erected thereon; and oral testimony should not have been admitted to prove that the building was the sole subject-matter of the contract. Such evidence varied the terms of the written contract as interpreted in accordance with the rule of law announced by this court in *Buerger* v. *Boyd, supra.* That rule of law is admittedly a harsh one, and has been rejected by some of the American courts, but it is in accordance with the weight of authority in this country.

HART, J., concurs.