PENNY *v.* PENNY.

4-7872    193 S. W. 2d 811

Opinion delivered April 22, 1946.

*Wesley Howard*, for appellant.

*Boyd Tackett*, for appellee.

SMITH, J.  A decree rendered December 15, 1943, granted Laverne Penny a divorce from her husband, Pete Penny, which recited that the question of property rights had been settled by agreement, and that the parties had also agreed as to the custody of their only child, a boy named Charles William, then five years old, by the terms of which agreement the mother was to have custody of the child for certain periods of time, the father to have custody during the remainder of the time, with the right of visitation to each parent while the other had the custody of the child.  This agreement as to custody was confirmed by the court, and the decree recites that: "It is further agreed by and between said parties that the father shall come after said child at all times when he is in the custody of his mother, and he, the said father.

desires to have him on week-ends as aforesaid agreed, and the mother shall go after said child at all times when he is in the custody of his father, and she, the said mother, desires to have said child according to the terms as aforesaid agreed.''

On June 13, 1945, Mrs. Penny filed a petition praying that the decree be so amended as to allow her the exclusive custody of the child, subject to the right of visitation by the father at all reasonable times. It was prayed also that Mr. Penny be required to pay an arrearage of $20 of the money allowed by the decree to Mrs. Penny for the child's support, the provision of the decree in this behalf being that Mr. Penny should pay $20 per month to Mrs. Penny.

An extended hearing was had, at which time many witnesses testified, and in a decree rendered on this hearing the motion was denied and the proceeding ''dismissed for want of equity.'' This decree recites that: ''. . . since plaintiff and defendant entered into an agreement as to the custody and support of said child at the time the divorce was granted, and that same was approved and made a part of said divorce decree, by the court, the plaintiff's motion and petition to modify said decrees as prayed should be denied, and all costs of this proceeding should be paid by the defendant.''

This decree as to the custody of the child, although rendered by consent, was not final in the sense that it was not subject to future modification, if it were shown that the child's welfare demanded that a change of custody be ordered.

In the case of *Daily* v. *Daily,* 175 Ark. 161, 298 S. W. 1012, Chief Justice HART said: ''In this connection it may be said that, whatever the result of the agreement between the husband and wife with respect to the custody and support of their minor child, such agreement does not affect the right of a court of equity to award the custody of the child to either parent and to make reasonable provision for its support and education. The reason

is that the public has an interest in the matter, and that the interest of the child is the paramount consideration of the court.''

Now, of course, the decree as to custody was a final decree when rendered, and it continued to be final unless and until the showing was made that conditions had changed, or that some fact was in existence when the decree was rendered of which the court was unaware at that time, and this is true whether the decree awarding custody of the child had been rendered by consent or not. It remains, therefore, to determine whether there has been any change of conditions which requires a modification of the decree in promotion of the child's best interest.

It was shown that the father drank intoxicants frequently and sometimes heavily, but it was shown also that he was addicted to drink both before and during his married life, but we think a greater indulgence was shown since the decree. Several witnesses testified that they saw Mr. Penny in an inebriated condition. On one occasion he fell asleep at a table in a cafe, and a few days later asked the proprietor of the cafe whether he had done anything out of the way while in the cafe, thus indicating that he had been very drunk. It was shown also that he drank liquor in the presence of his son, and on one occasion took from his son a bottle of Coca-Cola, which he had given him, and used the Coca-Cola as a ''chaser'' to a drink of liquor which he had taken; this meaning that he had washed the liquor down with the Coca-Cola.

It was shown that the child, while in Mr. Penny's custody, did not attend church or Sunday School, nor did Mr. Penny himself attend. There was a better environment in this respect when the boy was with his mother.

Neither the father nor the mother of the boy have homes of their own, and both live with their respective parents. The father's parents did not testify, although Mr. Penny testified that his parents were willing to have the boy with them. On the other hand, both the parents of the mother testified that they were willing and would

be glad to have the boy in their home. It occurs to us that there is a difference between the mere willingness to have the boy in their home and the desire to have him there.

The testimony showed a disposition on the part of Mr. Penny to annoy his wife when she went to his father's home to take the boy to her home. The boy frequently was not ready for the trip, and Mrs. Penny and her sister testified that Mr. Penny was more or less disagreeable when they came for the boy, and on one occasion Mr. Penny slapped Mrs. Penny's sister, who had gone with her for the child. Mrs. Penny sometimes sent her father for the boy, but was told by Mr. Penny that when she wanted the boy she would have to come in person for him. On the other hand, the testimony shows coöperation on Mrs. Penny's part in having the child ready for the father when he came for the boy.

The testimony on the part of Mrs. Penny was to the effect that when they did bring the child to her home he would be somewhat unruly, and the boy told his grandfather that he was not his boss, and that his father had told him that he did not have to obey his grandfather.

The paternal grandparents are both more than seventy years of age, while the maternal grandparents are much younger. Mr. Penny himself is not in good health and was unemployed at the time of the trial. There are four rooms in the home of the paternal grandparents, in which Mr. Penny and two brothers reside with their father and mother. There are five rooms in the home of the maternal grandparents in which the boy's mother and her brother reside with their father and mother.

The father's devotion to the boy is not questioned. He is good to the boy, possibly indulgent. He admitted his addiction to drink, but denied that he drank in the presence of his son. All the testimony is to the effect that either home would be a suitable place in which to rear a child. He would have school facilities at either place, but a school only five blocks from the home of his mother's father is more convenient.

The court made no order on the prayer that the father be required to pay a monthly installment of $20 due and unpaid. A payment of $5 was made on this arrearage, and Mrs. Penny testified that Mr. Penny said that this balance of $15 should be paid his mother for her attention to the boy. We think this request is significant. Under the original decree, which the court refused to modify, it was not contemplated that Mrs. Penny should use any part of the $20 allowed her for purposes of this kind. Under the original order Mrs. Penny has the custody of the child for the larger part of the time, and buys the boy's clothing. If any arrearage now exists Mr. Penny should be required to pay it.

Under the circumstances, as shown by the testimony, we think the weekly changes of the custody of the child are not to his best interests and that the permanent custody should be awarded to the mother, with the right of visitation to the father at all reasonable times. The monthly payments of $20 for the child's support to Mrs. Penny should be continued.

The decree will, therefore, be modified to award the permanent custody of the child to his mother, with the right of visitation by the father at all reasonable times, and he will be required to continue the monthly payments of $20 for the child's support.