LESLIE THOMAS v. WANDA LEE THOMAS

5-4925                                   443 S.W. 2d 534

Opinion Delivered June 2, 1969
[Rehearing denied August 25, 1969.]

*Jeff Duty* for appellant.

*Davis & Reed* for appellee.

CARLETON HARRIS, Chief Justice.    This is a case of
first impression in this state.    On January 15, 1968, ap-
pellee, Wanda Lee Thomas, instituted suit against ap-
pellant, Leslie Thomas, seeking an absolute divorce. On
March 26, 1968, the parties entered into a "property
and support agreement," setting out that it was "the
desire of the parties hereto to settle, compromise and
determine their respective rights, duties and obligations
with regard to support, property and financial mat-
ters * * *."    Included in the agreement was a provision
requiring Mr. Thomas to pay to Mrs. Thomas, as ali-
mony and support, the sum of $35.00 per week, beginning
on April 6, 1968.    Thereafter, on May 29, 1968, a de-
cree of divorce was entered, granting appellee an ab-
solute divorce from appellant, the decree reciting that
the parties had entered into a certain property and sup-

port agreement, which had been filed and approved by the court. The actual order in the decree reads as follows:

It is, therefore, by the Court considered, ordered, adjudged and decreed that the plaintiff be, and she is hereby, awarded an absolute divorce of and from the defendant; that the Property and Support Agreement entered into by the parties which is filed herein, be, and the same is hereby, specifically approved by the Court and is adopted and incorporated herein as a part and parcel of this Decree in settlement of the respective rights, liabilities, and obligations of the parties hereto; and that the defendant bear the costs of this action and attorney's fees incurred herein.

"It is so ordered."

Thereafter, appellee filed a petition asking that Leslie Thomas be cited for contempt of court, the petition alleging that appellant had failed to comply with the provision in the agreement requiring the payment of $35.00 per week to Mrs. Thomas. On hearing, the court found appellant in contempt, and ordered that he be confined in the Washington County Jail for a period of 10 days. From the order so entered, appellant brings this appeal. The sole point for reversal is that the court had no authority to hold appellant in contempt under the wording of the decree, appellant asserting that the court made no order requiring Mr. Thomas to comply with the terms of the property settlement.

At the outset, it might be stated that there is authority on both sides of the question of whether a court can enforce, by contempt proceedings, a property agreement reached in contemplation of divorce. Cases are cited by both appellant and appellee, holding with their respective positions. It is our view that the question, in this state, is determined by statute, viz., Ark. Stat. Ann.

§ 34-1212 (Repl. 1962). Prior to 1941, the controlling statute was Section 4391 of Pope's Digest, which provided:

"The court may enforce the performance of any decree or order for alimony and maintenance by sequestration of the defendant's property, or that of his securities, or by such other lawful ways and means as are according to the rules and practice of the court."

In 1941, the Legislature amended this section, same now appearing as Section 34-1212, and reading as follows:

"Courts of equity may enforce the performance of written agreements between husband and wife made and entered into in contemplation of either separation or divorce and decrees or orders for alimony and maintenance by sequestration of the defendant's property, or that of his sureties, or by such other lawful ways and means, including equitable garnishments or contempt proceedings as are in conformity with rules and practices of courts of equity."

This action by the Legislature clearly seems to have been taken for the purpose of enabling the Chancery Court to enforce the performance of written agreements between husband and wife entered into in contemplation of divorce, *i.e.*, to cover situations like the one presently before us. It will be noted that the amended statute also specifically includes contempt proceedings as one means of enforcement.

Nor do we agree with appellant that, under the decree, no order to make the weekly payments was entered. The pertinent part of that decree, heretofore quoted, commences, "It is, therefore, by the Court considered, *ordered*, adjudged and decreed." this language relating to three items which follow. First, it is ordered that

the plaintiff is awarded an absolute divorce "from the defendant; * * *." Following the semi-colon, the decree provides that the property and support agreement is incorporated as a part of the decree in settlement of "the rights, liabilities, and obligations of the parties hereto; * * *." Immediately after this semi-colon, there appears the language, "and that the defendant bear the costs of this action and attorney's fees incurred herein." In other words, the opening line wherein the word, "ordered," is used, applies fully as much to the second clause (relating to the settlement) and to the third clause (referring to the costs) as to the first clause (awarding the divorce).

We think that, in addition to the statute, simple logic supports this view. It is certainly logical that a court, in order to maintain the respect of those who appear before it, be able to enforce the provisions sanctioned by it in a decree of divorce. A like situation was at issue in the case of *Solomon* v. *Solomon*, 149 Fla. 174, 5 So. 2d 265. There, a husband and wife executed a property agreement in contemplation of divorce, the agreement setting out that the " 'decree shall provide that the husband shall pay to the wife $300.00 per month on the first of each * * * month.' " The final divorce decree was eventually entered, but contained no express provision for the payment of the stipulated amount of alimony, such decree simply reciting "that the property settlement and agreement * * * is hereby approved and ratified in all respects, and incorporated by reference into this decree and made a part hereof." The Chancellor directed the husband to show cause why he should not be held in contempt for disobedience of the decree by failing to meet some of the payments, but on hearing, refused to hold the husband in contempt. On appeal, Mr. Solomon took the same position relied upon by Mr. Thomas in the case before us. Mr. Justice Thomas in a succinct and learned opinion, speaking for the court, said:

"There can be no doubt that the court in the decree sanctioned the arrangement the parties had

made between themselves anent the discharge by the husband of his legal and marital duty to support the wife even after the marriage tie was severed and until she remarried.

"It is the appellee's position that, although the appellant has her remedy to collect the amount due, she cannot resort to proceedings in contempt for that purpose because no specific order was made by the chancellor commanding the appellee to meet the promised payments and that, therefore, he could not be punished for defiance of the decree.

"It seems to be the rule that where such an agreement is merely ratified and not made a part of the final decree, the husband is not responsible in contempt proceedings for default on his part, but if the agreement is embodied in the decree and contemplates when executed that it shall become a part of the court's order, a failure of the husband is punishable by contempt.

Here, the property and support agreement was not only specifically approved by the court, but was adopted and incorporated as part of the decree in setting out the obligations of the parties.

Affirmed.