### J. A. BROWN AND ETHEL BROWN v. LORENE WINDLAND

5-5340                                             457 S. W. 2d 840

Opinion delivered September 21, 1970

*Rhine & Rhine,* for appellants.

*Penix & Penix* and *Hartman Hotz,* for appellee.

JOHN A. FOGLEMAN, Justice. This appeal and cross-appeal involve a decree determining the boundaries of a tract of land, 100 feet by 200 feet, conveyed to appellants' grantors by appellee and her husband E. H. Windland, who died in 1966. Appellee is the owner

of, and resides upon, the remainder of a 9½-acre tract in the NW¼ SE¼ of Section 34, T 17 N, R 5 E, in Greene County from which the Windlands conveyed a lot to Hayden and Nora Carter by deed dated July 7, 1956. The Carters conveyed the same lands to the Browns by deed dated March 26, 1958. The particular description of the lot in both deeds was:

> * * * Beginning at a point on Paragould-Walcott Public Road (Now State Highway No. 25) Nine (9) rods South of the Center of Section Thirty-four (34), Township Seventeen (17) North, Range Five (5) East, run thence South along the gravel country road, Two Hundred (200) feet; thence East One Hundred (100) feet; thence North parallel with west line of said Northwest Quarter (NW 1-4) of the Southeast Quarter (SE¼) of said Section, Township and Range, Two Hundred (200) feet to said Paragould-Walcott Public Road (now State Highway No. 25); thence West along said right-of-way One Hundred Feet to the place of beginning.

The 9½-acre tract was acquired by the Windlands on July 2, 1945. The intersection of State Highway No. 25 and Honeysuckle Road is the northwest corner of the tract. The description of the beginning point of the 9½-acre tract in the deed to the Windlands was identical with that in the deeds to the lot in question. Although Honeysuckle Road is not mentioned in the deed to the Windlands, one of the courses runs "to said Paragould-Walcott Public Road" and the closing course runs 42 rods "in a northwesterly direction with said road * * * to the place of beginning."

Appellants state that the issue on appeal is the correct location of the lot. The real question is whether the lot description includes any part of the roads. The litigation was instituted by appellee when appellants removed fence posts she had caused to be on what she contends, and the trial court found, to be the east line of the Brown lot. She contends that about 20 feet of the lot lies in Honeysuckle Road, while appellants

assert that it was the intention of all parties to convey a lot 200 feet long and 100 feet wide without easements or encroachments. Appellee also contends that, after the litigation was commenced, appellants destroyed a fence that marked the south boundary of the lot and encroached upon her lands for a distance of 20 to 30 feet south of this line.

After hearing the evidence the chancellor found: that the northeast corner of defendant's lands was correctly marked by an iron stake placed in 1956 by George Wadley, described in the decree as being at a point on the south right-of-way line of Highway 25 approximately 100 feet eastward along said line from a point in Honeysuckle Road approximately 348.5 feet south of the center line of Section 34; that the east boundary line of appellants' lot runs south from said iron stake a distance of 200 feet parallel with the west line of the NW¼ of the SE¼ of the section, and is defined by a rock ledge or wall, grapevines and other vegetation; that appellants' south boundary line runs west from a point 200 feet south of the iron stake to the center line of the section in the right-of-way of Honeysuckle Road.

Appellants contend that the court's decree is erroneous because it does not give effect to the intention of the appellee in conveying the lot originally, because it is based on hearsay evidence, because certain distances were described by the court as approximate and because it does not fix the boundary lines with such certainty that they can be located.

Appellants' argument as to the intention of the parties is based principally upon statements of appellee upon cross-examination that it was her intention to convey a lot 200 feet long and 100 feet wide and some equivocation upon her part whether fences bordering the roads were on boundary lines on the west and north sides of the lot and the 9½-acre tract. Mrs. Windland, however, steadfastly maintained that she and her husband had caused a survey to be made by former

County Surveyor George Wadley, now deceased, as the basis for the conveyance to the Carters and that the sale and conveyance were actually made according to that survey. She identified an iron post[1] which was 100 feet east of the center line of the section and 3.1 feet north of the south right-of-way line of Highway 25 as one placed there by Wadley at that time. Since the weight to be given to appellee's testimony depends so much upon demeanor evidence, we are not disposed to disagree with the chancellor's statement, in ruling upon an objection to repetitive cross-examination, that he understood the witness to have testified that the sale to Carter was made according to the Wadley survey.

Each of the parties offered the testimony of a surveyor. Appellants state that the only point of disagreement between the surveyors is the location of the west line of the Brown lot. Appellee's surveyor located it somewhere in the roadway of Honeysuckle Road, so that about 20 feet of the road would be included within the Brown lot. Appellants' surveyor, Jernigan, commenced his survey by assuming that the west boundary of the Brown lot was marked by a fence on the east border of Honeysuckle Road and the north boundary, by a fence on the south right-of-way line of Highway 25. A survey was made by Harvey S. Johnson in 1967, after the death of appellee's husband, for the purpose of designating separate tracts to be devised to the children of appellee's three children by her will. In order to accomplish this purpose, it was necessary to determine the boundaries of the Brown lot. Johnson stated that his survey was based upon the description in the conveyance to the Windlands. He began it at a point on the south right-of-way line of Highway 25, nine rods due south of the center of the section, which was within Honeysuckle Road. While he was not prepared to say that the center lines of the section and of Honeysuckle Road coincided, he stated that his survey indicated that they did, generally, although he admitted that exact coincidence would be unusual. In searching for

---

[1] This marker is alternatively referred to in the record as an iron post, iron pipe or iron stake.

physical evidence to corroborate the survey, he found the iron pipe later identified by appellee. He also found a rock ledge or wall, 100 feet east of the center line of the section, extending 102.1 feet south from this pipe.

On the other hand, Jernigan's survey was not based upon the location of the center of the section. In order to connect the northwest corner of the Brown tract to the center, according to his survey, one would have to proceed on a bearing S 7°40′ E rather than due south and for a distance of 149.9 feet rather than 148.5 feet. Jernigan admitted that if he had proceeded due south from the center of the section, he would have gone right down through the middle of Honeysuckle Road and ultimately would have reached the approximate location of the rock wall and some grapevines. He said that the iron post referred to previously was pretty close to 20 feet west of the line he considered to be the east line of the Brown lot.

The Johnson survey is supported by other evidence. Sally Westbrook, who had lived in sight of the Brown lot since 1936, testified that after the Browns moved on the lot, they replaced a fence with the rock wall at the same location. Esther Scott, Recorder and Treasurer of Center Hill, had lived on Highway 25 a little over one-quarter of a mile from the Brown property over 25 years and in the vicinity for 68 years. She testified that she had walked up and down the road for 60 years. She recalled the sale of the lot by the Windlands to the Carters and that the Windlands put the fence on the east line of the lot at that time. According to her the Browns filled their lot with dirt up to the rock wall. She said that the county road had been in its present location since she was a small child and that the survey of the center line of the section ran right in the middle of the road, with only slight variation. Jernigan admitted that if he had followed a fence line north of Highway 25 in making his survey, he would have come down through the middle of Honeysuckle Road. The reason for his varying from this course was that he interpreted the words "along" in the deed description to

mean that the line ran on the edge of the roads in both cases.

J. A. Brown said that he built the rock wall as a retaining wall in order to fill in his yard, but not to mark the boundary. While the parties agree that there had not previously been a dispute about the east line, there is an irreconcilable conflict as to when the Browns started mowing east of the rock wall. According to the Browns, neither of them ever had any clear idea as to the proper location of the line. They admitted that the iron post was in the line of the rock wall, but said that no one ever told them why it was there. Mrs. Brown did use the iron stake as a guideline for laying the rock wall. When a water line was put through the property some eight or nine years before the trial, appellee had made her contentions about the location of the east line known to Mrs. Brown.

We cannot say, upon the record before us, that the holding of the chancellor as to the intention of the parties was against the preponderance of the evidence.

Appellants place great reliance upon fences found on the eastern edge of Honeysuckle Road and another along the south right-of-way line of Highway 25 when they bought the property. No one actually said that these fences had marked the west and north lines of the Brown property as described in the Windland-Carter and Carter-Brown conveyances, even though the Browns may have assumed this to be the case. On the other hand appellee testified that the Carters always recognized the line indicated by the iron post (on which the Brown rock wall was built) as the eastern boundary of the property. Mrs. Scott testified that the Windland tract was fenced for pasturing cattle until recent years. A pasture fence would not have been placed within the road or highway right-of-way, wherever the property lines may have been, if it would have interfered with the use of the way.

Appellants argue vigorously that Jernigan's inter-

pretation of the course "along Honeysuckle Road" is correct. The definition of the word "along" when used without such words as "the side of," "the edge of," or "the boundary of" does not imply appellants' interpretation. It is defined as "[l]engthwise of: in a line with or parallel to the length of the boundary of; implying motion or extension upon, at or near, the side of, according to the context, and distinguished from across; * * *" Webster's New International Dictionary, Second Edition; or "in a line parallel with the length or direction of * * * or on a line through the center or central axis of (the boundary runs along the road)—distinguished from across * * *" Webster's Third New International Dictionary.[2]

While Jernigan's interpretation of land descriptions has been followed in some cases, there are authorities holding that such a course merely follows the course of the road, street or highway or that the meaning of the word "along" is a matter of construction and intention to be determined from the context in which it is used and the surrounding circumstances. *Sweet* v. *Irrigation Canal Co.,* 198 Ore. 166, 256 P. 2d 252 (1953); *Buck* v. *Squiers,* 22 Vt. 484 (1850); see also *Moody* v. *Palmer,* 50 Cal. 31 (1875); *People* v. *Astle,* 337 Ill. 253, 169 N. E. 185 (1929). We think that the better rule is expressed in cases so holding. In some cases, the location of the beginning point is an important or determinative factor in the construction given such a phrase as is in question here. See *Holloway* v. *Delano,* 64 Hun. 27, 28 N. C. 183, 18 N. Y. S. 700 (1892); *Cochran* v. *Smith,* 73 Hun. 597, 26 N. Y. S. 103 (1893).

When we consider that the beginning point of the tract involved lay in Honeysuckle Road (when the course described in the deed was literally followed) and not on its eastern border, along with the evidence as to the actions of the parties, we are compelled to

---

[2]For a discussion of the meaning of the word in a statute see *Nicolai* v. *Wisconsin Power & Light Co.,* 227 Wis. 83, 277 N. W. 674 (1938).

agree with the chancellor's construction of the lot description. Evidence of Carter's acceptance of the line and of the subsequent actions of the Browns, even though not undisputed, is persuasive to indicate that there had been an acquiescence in the line claimed by appellee. See *Kittler* v. *Phillips,* 246 Ark. 233, 437 S. W. 2d 455; *Vaughn* v. *Chandler,* 237 Ark. 214, 372 S. W. 2d 213; *Palmer* v. *Nelson,* 235 Ark. 702, 361 S. W. 2d 641. In this connection there was testimony that the Browns never questioned that the line ran along the rock wall until they sought to buy additional land east of the wall from Mrs. Windland, that the Browns then started mowing east of the rock wall after which Mrs. Windland's son commenced putting up posts on this line, that Mrs. Brown thereafter stated that she was not trying to take that land, but was merely trying to keep the grass out of her grapevines on or near this line, and that Mrs. Brown admitted that she had known for eight or nine years that appellee claimed that the Brown lot did not contain 100 feet east of and exclusive of Honeysuckle Road.

Appellants also argue that the fences and the roads constituted monuments controlling courses and distances. While the general principle may be a correct statement of a rule of law, there is no reference to the fences in the conveyances. There is no evidence that those in place before Carter bought the lot were intended to indicate the boundaries on the north and east sides of the lots, unless some of the equivocal answers of appellee on cross-examination be so considered. What we have heretofore said about the meaning of the word "along" with reference to the roads also prevents the edges of the right-of-way from being considered as controlling.

The rule of law stated is not a controlling one, but one of construction, adaptable to the circumstances and the intentions of the parties, as indicated by 11 C. J. S. Boundaries § 47, 596, cited by appellants. See also 23 Am. Jur 2d 277, Deeds, § 236; 23 Am. Jur. 2d 205, Deeds, § 159. When this matter was first presented to this court,

the first maxim of construction stated was that a deed should be construed favorably to and as near the intention of the parties as possible consistent with the rules of law. *Doe* v. *Porter,* 3 Ark. 18, 56. The court in that case said that in construing the land description, the court was restricted to the grant itself in determining the intention of the grantor, since there was no ambiguity or uncertainty upon the face of the deed. Subsequently, we have recognized that, while a description in a deed which is clear and unambiguous cannot be set aside by parol proof of the acts of the parties, it is competent to look to the construction placed on the deed by the parties themselves as an aid to ascertaining its meaning whenever it is doubtful. *Walker* v. *David,* 68 Ark. 544, 60 S. W. 418. Then, the courts in their endeavor to arrive at the meaning of the description should assume the position of the parties, consider the circumstances of the transaction and read and interpret the words of the instrument in the light of these circumstances. *Scott* v. *Dunkel Box & Lumber Co.,* 106 Ark. 83, 152 S. W. 1025; *American Investment Co.* v. *Gleason,* 181 Ark. 739, 28 S. W. 2d 70. In the *Scott* case, we held that facts existing at the time of the conveyance and prior thereto might be proved by parol evidence with a view of establishing a particular line as being one contemplated by the parties, when by the terms of the deed it is left uncertain.

We feel that the chancellor appropriately considered the various factors and arrived at a correct result. The edge of Honeysuckle Road cannot be considered as a fixed monument under the wording of this description, and it was proper for the court to determine the intention of the parties as to the location of the west line of the Brown lot. When this was done, the location of the east line was readily determined.

We consider the use of the word "approximately" by the chancery court in designating distances to be of no significance. It appears that the court may have done this in order to avoid any dispute if these distances did not bring one precisely to the Wadley iron pipe. How-

ever, in locating the point the decree erroneously places it at a distance of 348.5 feet south of the center line of section 34, even though the chancellor stated this distance as nine rods in his oral opinion given at the conclusion of the trial. Obviously, this is a clerical error and the distance should have been stated as 148.5 feet. Examination of the plats exhibited clearly shows that, in referring to the Johnson plat which showed the location of the Wadley iron pipe, the court mistook the measurement from the center of the section to the southwest corner of the Brown lot for that to the northwest corner.

Appellants also contend that the court erred in designating the northeast corner of the lot as being at the iron pipe, when Johnson placed it a distance of 3.1 feet north of the right-of-way line of Highway 25. We are unable to say that this was erroneous, because the highway right-of-way appears to curve toward the southeast, and the south line of the Brown lot as described runs due east, and not parallel with this right-of-way. It could well be said that this pipe was placed to locate the northeast corner of the tract to be conveyed by the Windlands to Carter.

Appellants' argument that appellee's testimony as to the Wadley survey was hearsay cannot be considered, because it was admitted without objection. It was not error for the court to consider hearsay in the absence of an objection. *Rinke* v. *Shackleford,* 248 Ark. 941, 455 S. W. 2d 83.

The cross-appeal questions the correctness of the court's determination as to the south line of the Brown lot, contending that appellee had adverse possession of the disputed area as far north as were 10 posts placed there by her as long ago as Easter 1962. Brown testified that there were only two or three of these posts and that they were set in holes around which the fill dirt was never tamped. He stated that he had pulled up these posts. As pointed out by the chancellor in his oral opinion, appellee's positions in her pleadings as to the

location of this line were inconsistent. The Johnson survey made for appellee locates this line as beginning at a point 200 feet south of the northwest corner. Although appellee says that the posts were pulled up in 1969 after the dispute originated, her testimony as to her possession does not include any other adverse act on her part or that of her late husband. We do not find a preponderance of the evidence to support her burden on this point.

The decree is affirmed on appeal and cross-appeal. The cause is remanded for necessary correction of the decree.