G. E. POWELL and SIMMONS FIRST NATIONAL BANK, Co-Executors of the Estate of Ben Pearson v. Evajane PEARSON

5-5766                                        476 S.W. 2d 802

Opinion delivered February 28, 1972

*Chowning, Mitchell, Hamilton & Chowning,* for appellants.

*Thurman Ragar Jr.* and *Carlton Currie,* for appellee and cross-appellant.

FRANK HOLT, Justice. Appellee, the divorced wife of Ben Pearson, deceased, brought this action against the appellants to enforce a "property settlement and alimony agreement" against decedent's estate. In 1951, in contemplation of divorce, Pearson and the appellee made an agreement which provided that Pearson would convey to appellee their homestead and bound himself, his "executors, administrators, or heirs," to pay in full the existing mortgage. As security he agreed to assign sufficient proceeds from his life insurance in payment of the mortgage, as well as payment of the taxes and insurance during the indebtedness. It was agreed that she would own the household furniture and fixtures and the utility deposits for the dwelling. In addition, he agreed to bind himself to pay her $180 per month as alimony "so long as she shall live, or until such time as such Evajane Pearson shall remarry." In "consideration" of the "aforesaid," the appellee agreed to deed to him her interest in four city lots. This agreement was approved by the chancellor and incorporated into the divorce decree. In doing so the chancellor found that the parties had made "a contract wherein all property rights and alimony payments have been settled and agreed upon."

Pearson fully complied with the terms of the agreement until his death in 1971. When the appellants, co-executors of the estate, refused to continue the alimony payments, appellee filed a claim alleging that the pro-

visions in the agreement as to alimony did not terminate upon Pearson's death; further, that the obligation continued so long as she lived or until she remarried; and that the amount due should be converted to its present value and paid to her. It was stipulated that appellee had not remarried and that she is 70 years of age. The present value of the estate was also agreed upon in the event the court found it was susceptible to a reduction.

The probate court found that the alimony agreement did not terminate upon the death of Pearson; that his estate was liable for payments to the appellee in accordance with the pre-divorce agreement; further, that appellee's claim was not susceptible to reduction to its present value, and ordered appellants to pay appellee the monthly payments as provided in the agreement. For reversal appellants contend that the agreement was not an independent contract, and, therefore, it merged into and became a part of the divorce decree which made the periodic monthly payments nothing more than alimony terminating upon Pearson's death; also, that the court erred in holding that it was the intention of the parties to have these monthly payments continue after his death.

In *Armstrong* v. *Armstrong*, 248 Ark. 835, 454 S. W. 2d 660 (1970) the husband, in a written contract incorporated in the divorce decree, agreed to pay his wife from the date of the anticipated divorce "the sum of $160 per week as alimony for life or until she remarries." Also, the husband agreed to pay the taxes on the homestead as long as alimony was due and she continued to own the home. We said that this pre-divorce agreement, even though improvident, "clearly shows an independent agreement for it will be noted, that unless she remarries, appellee is due to receive alimony for life. This is not normally a provision that would become merged in a decree." We held that this was an independent contract enforceable in law or equity. Likewise, in the case at bar we hold that this written agreement to pay alimony for the duration of appellee's life or until she remarries demonstrates that it was a separate and independent contract between the parties which could be enforced either in a court of law or equity. See, also,

*Seaton* v. *Seaton,* 221 Ark. 778, 255 S. W. 2d 954 (1953); *Bachus* v. *Bachus,* 216 Ark. 802, 227 S. W. 2d 439 (1950).

We also agree with the probate court that it was the intention of the parties that the alimony payments would continue after Pearson's death. Appellants argue that since Pearson bound his estate to discharge the indebtedness on the home, the absence of similar language with respect to the payment of alimony indicates the intention not to bind the estate. Appellee, however, responds that the contract language is explicit and unambiguous that she would receive alimony as long as she lives or until she remarries. Appellee was the only witness and she testified that at the time of their settlement and divorce her husband was part owner of a very profitable manufacturing business with sales in the hundreds of thousands of dollars; that he was a man of substantial means; that since the divorce her principal source of income was her alimony; that presently her only income is a $66 per month social security check; that they had been married for 30 years and she had assisted in the business as a secretary. It appears that Pearson, following the pre-divorce settlement, secured the divorce upon the basis of three-years separation.

A husband can make an independent agreement to pay his wife alimony with a continuing obligation upon his estate after his death. Such an agreement is valid when stated by express terms or the intentions of the parties are determinable from the wording of the contract, together with the surrounding circumstances. 39 A. L. R. 2d 1415; *Desjardins* v. *Desjardins,* 193 F. Supp. 210 (E. D. Ky. 1961); *Taylor* v. *Gowetz,* 158 N. E. 2d 677, 75 A. L. R. 2d 1079 (1959).

In the case at bar, which is one of first impression, we agree with the probate judge that it was the intention of the parties that the alimony obligation would continue as long as appellee lives or until she remarries and that it is an enforceable obligation against the decedent's estate. In the circumstances, had the parties intended otherwise, the agreement could have provided that this obligation would cease upon the death of the promisor. We view this transaction as a complete and permanent

settlement of the rights between the parties with all the elements essential to a valid and enforceable contract.

On cross-appeal the appellee asserts that the court erred in refusing to commute appellee's claim to its present value pursuant to the provisions of Ark. Stat. Ann. § 62-2608 (Repl. 1971). The pertinent part of this statute provides: "Upon proof of a claim which will become due at some future time, the amount of which is capable of ascertainment, the court shall allow it at the present value thereof, and payment may be made as in the case of an absolute claim * * *." Appellee testified that because of her religious beliefs she had no intention of ever remarrying. The court, however, correctly held that "the amount of the [her] future claim [is] completely uncertain and not capable of ascertainment" inasmuch as, "[n]otwithstanding the improbabilities of claimant ever remarrying", * * * "the possibility will be ever present so long as she lives", therefore, "her claim can only become absolute" as each payment becomes due.

Affirmed on direct and cross-appeal.

Harris, C. J., not participating

Fogleman, J., concurs.

John A. Fogleman, Justice, concurring. I concur in the result reached in this case, substantially upon the basis of our decision in *Armstrong* v. *Armstrong*, 248 Ark. 835, 454 S. W. 2d 660, from which I dissented. It appears to me that there are a number of elements in the agreement here that are similar to those involved in the *Armstrong* case. One of them is the provision of the payment of alimony for life. Another is the agreement of the husband to pay taxes and insurance on the property conveyed to the wife until the indebtedness was paid in full. This latter obligation bound the executors, administrators or heirs of the husband. As I understand the decree it makes no mention that the payment of alimony is to continue for the life of the wife, even though the agreement was approved by the court. The decree simply orders and directs the payment of $180 per

1112

month as alimony, the balance of the indebtedness due Southern Savings and Loan Association on a mortgage and the taxes and insurance on the mortgaged property and requires the assignment of an insurance policy. It says nothing about the conveyance or retention of certain property which was also the subject of the property settlement agreement.

It also seems to me from a reading of the agreement in this case that the payment of the sum of $180 per month was not, strictly speaking, alimony, but was agreed upon as a part of the property settlement as well as an alimony agreement.