Winthrop Paul ROCKEFELLER *v.* Deborah
Cluett Sage ROCKEFELLER

94-205                                                980 S.W.2d 255

Supreme Court of Arkansas
Opinion delivered November 19, 1998

*Pamela S. Osment* and *Michael L. Murphy*, for appellant.

*Wright, Lindsey & Jennings*, by: *Alston Jennings*, for appellee.

W H. "DUB" ARNOLD, Chief Justice. The parties were divorced on January 11, 1979. An agreement between the parties was executed on September 15, 1978, [hereinafter "Agreement"], that set out the mutual property rights of the parties and the amount of monthly payments to be made to the appellee. In the order granting the divorce, the trial court incorporated the Agreement into the decree and found that "the agreement . . . is fair, just and equitable and it is hereby approved, ratified and confirmed in all things set forth as the final determination of this court as to the property rights of the parties as therein defined."

The Agreement provides, in pertinent part, that:

> SECOND: A. Husband and Wife shall share the care and custody of the Children and the supervision of their upbringing. It is recognized, however, that the Husband will assume the primary obligation for the care, support, maintenance, education, security and general welfare of the Children.

* * * *

FOURTH: A. The Husband shall pay to the Wife for her maintenance and support, and for the maintenance and support of the Children* [* "Maintenance and support of the Children," as used in this fourth paragraph includes provision for food, lodging, entertainment and other similar expenses, but does not include the cost of education, health care, or mutually agreed security. (Footnote in the original text.)] during such times as they may be with her, the sum of $15,000 on September 20, 1978, and the sum of $20,000 on the 15th day of each month thereafter provided, however, that the Husband's obligation to make such payments shall terminate in the event that a decree of divorce shall be awarded.

B. If a decree of divorce is awarded . . . Husband shall thereafter pay to the Wife for her maintenance and support, and for the maintenance and support of the Children during such times as they may be with her, the sum of $18,000 on the 15th day of each month . . . provided, however, that the Husband's obligation to make such payment shall terminate in the event that the Wife shall remarry. In such event, the final payment . . . shall be on the 15th of the day of the month in which the remarriage occurs.

C. If the Wife remarries, Husband shall thereafter pay to the Wife for her maintenance and support, and for the maintenance and support of the Children the following sums:

1) [$18,000 each month for 36 months]
2) [After the ending of the 36th month, $9,000 each month for 24 months]
3) [After the 24th month, if any of the children are under the age of 21, $5,000 a month until the youngest child reaches 21 years old.]

* * * *

F. It is the understanding of the parties that the "alimony" paid . . . by the Husband to the Wife . . . will be deductible by the Husband and taxable to the Wife for Federal and State income tax purposes."

* * * *

SIXTH: A. If a decree of divorce is awarded by a court of competent jurisdiction, to either or both of the parities the Husband shall pay to the Wife the single sum of $500,000. . . .

* * * *

SEVENTH: The parties agree that the Husband shall be entitled to claim on his federal income tax return any exemption deduction allowed for each of the Children as dependents. . . .

* * * *

TENTH: . . . The parties hereto covenant and agree that in the event that either of them shall obtain a final judgment or decree of separation or divorce, it shall contain no provision for the support and maintenance of the Wife or the Children and no provision for the settlement of the property rights of the parties hereto or for the custody of the children except as provided herein. The parties agree to submit this Agreement to the court . . . it being their desire that the Agreement shall be ratified, confirmed, approved and fully adopted by the court and incorporated in any such judgment or decree by reference and may be enforced by either party with the same effect as if the Agreement had been set out in full in the decree of divorce, and the terms and provisions of this agreement shall not be merged in any such judgment or decree and shall in all respects survive the same and shall not be subject to modification.

* * * *

FIFTEENTH: . . . No modification or waiver of any of the terms of this Agreement shall be valid unless in writing and signed by the parties hereto.

On March 18, 1992, appellant filed a Petition for the Termination of Alimony or, in the alternative, a Modification of the Divorce Decree. Appellant contends that the section of the Agreement that requires termination of the payments to the appellee upon her remarriage should take effect because, although she has not legally entered into a marriage, in reality she has "remarried" by living with a man, having three children with him, and holding herself out to be married. The appellant contends that appellee is engaged in a *de facto* marriage and that allowing her to use financial gain to avoid the institution of marriage violates the public policy of Arkansas.

The trial court denied appellant's petition. The trial court noted that the appellee had been living with a man for over five

years, had used the man's name, had incurred joint debt, jointly leased property, and produced three children. Despite these facts, the trial court noted that Arkansas does not recognize *de facto* marriages and that enforcing the Agreement does not violate public policy. The court further noted that it did not have authority to terminate the obligation or to modify the Agreement by allocating the respective amounts of alimony and child support. We affirm.

The appellant appeals on three bases: (1) the trial court erred by not recognizing that the appellee is the party to a *de facto* marriage and thus terminating the Agreement; (2) the trial court erred by failing to find that enforcing the Agreement violates public policy; and (3) the trial court erred in denying the petition to allocate the lump-sum payment amount between child support and alimony and modify the payment amount by decreasing the amount paid for child support due to a change of circumstances. Based upon the merits of the case and for the reasons set forth below, we affirm the trial court's decision.

## I.   Incorporated agreement and de facto marriage

For his first argument on appeal, the appellant contends that the trial court erred when it refused to terminate alimony because the appellee had entered into a *de facto* marriage. We disagree.

In *Armstrong v. Armstrong*, 248 Ark. 835, 454 S.W.2d 660 (1970), the parties offered a written property settlement contract during a divorce proceeding that the trial court incorporated into the divorce decree. The husband later filed for a modification of alimony payments; the request was denied. *Id.* This court affirmed the trial court's denial and stated: "The fact that Dr. Armstrong entered into an improvident agreement is not grounds for relief, and we think the provisions of the agreement make clear that it was a separate and independent contract entered into between the parties." *Id.* at 838-39.

There are other cases which hold that a court has no authority to modify an independent contract that is made part of a divorce decree. *See, e.g., McCue v. McCue*, 210 Ark. 826, 197 S.W.2d 938 (1946); *Pryor v. Pryor*, 88 Ark. 302, 114 S.W. 700 (1908). In *Pryor*, this court determined that a court can later

modify an alimony decree entered *by the court* because it is a "question of fixing by decree the amount of alimony to be allowed," while a court is prohibited from altering alimony agreed to in a property settlement *contract* because "it is based upon the contract of the parties [and modification] would be no less than a modification of the contract itself." *Id.* at 309-10.

Appellant argues that the contract for alimony payments should be terminated by this court on the basis that there is a *de facto* marriage between the appellee and the man with whom she has been living and has had three children. In support of this, appellant offers two theories: (1) this court in *Byrd v. Byrd*, 252 Ark. 202, 478 S.W.2d 45 (1972), "widely left open the possibility that certain 'extreme situations' could warrant an interpretation that a former spouse has effectively remarried"; and (2) other jurisdictions acknowledge that certain situations can exist where a *de facto* marriage can exist.

■ Arkansas does not recognize *de facto* marriages. Furthermore, appellant's reliance on *Byrd* is unfounded. *Byrd* involves a petition by a husband to terminate *court-ordered* alimony when his ex-wife was living with another man. This court upheld the trial court's denial of the husband's petition and concluded that "we are not prepared to say that a former husband is entitled to sit in judgment of his divorced wife's conduct, any more than she is entitled to take such a position with respect to his conduct." *Id.* at 203.

The language from *Byrd* that appellant cites follows the discussion by this court that a trial court could terminate alimony in the event that the wife had remarried because the wife's care would have been assumed by the new husband. We noted that there had been instances, in other jurisdictions, where an ex-wife had assumed another man's name and held herself out in public as his wife, and *court-ordered* alimony had been terminated. *Id.* at 203.

■ This language is not applicable to the situation at bar, nor is it arguable that it leaves open the possibility that an "extreme situation" could warrant the termination of a contract to provide alimony. The distinction lies in the fact that the *Byrd*

court was examining a situation involving *court-ordered* alimony of which courts retain jurisdiction to modify in light of changed circumstances. *See* Ark. Code Ann. § 9-12-314(a) (Repl. 1995). As stated in the *Pryor* decision, there is a distinction between alimony awarded by court decree and alimony established by a contract, as in this case.

■ Appellant's reliance upon other jurisdictions is not persuasive in that he fails to give argument why findings of other jurisdictions should apply to this state. All states have domestic-law statutes that give the factors for determining whether a marriage exists and the procedures for divorce and alimony. Another state's case law is not persuasive, in itself, to prove that the State of Arkansas should follow it. Lacking a closely parallel statute that is being interpreted, cases of another state are totally unrelated on an issue so closely intertwined with our state statutes.

■ Moreover, modifying the term "remarriage" would be in effect modifying the Agreement. These agreements are generally drafted with great care and undergo much negotiation. To include such a new provision defining cohabitation as "remarriage" would effectively redraft the contract rather than enforce the contract entered into by the parties. This would effectively cure one party's mistake in entering into an improvident agreement. *See Armstrong, supra.* The alimony, in instances where there is an agreement, arises from a contract right, not an equitable right through the system of justice. The moral or immoral actions of the recipient should not be relevant in any manner to the enforcement of a contract. *See Pryor, supra.* Accordingly, we affirm the trial court's refusal to terminate alimony based on the theory of *de facto* marriage.

## II. Public policy

Next, the appellant asserts that the Agreement was void as a matter of public policy because it encouraged the appellee to avoid remarriage and to have children outside of marriage. The trial court found that "the enforcement of the parties' agreement does not violate any established public policy of the State of Arkansas," and we agree.

■ ■  It is well settled that the public policy of this state can be found in our statutes and constitution. *Vincent v. Prudential Ins. Brokerage*, 333 Ark. 414, 970 S.W.2d 215 (1998); *Western World Ins. Co., Inc. v. Branch*, 332 Ark. 427, 965 S.W.2d 760 (1998); *Wal-mart Stores, Inc. v. Baysinger*, 306 Ark. 239, 812 S.W.2d 463 (1991). The statute most applicable to the facts at hand, Ark. Code Ann. § 9-12-312 (Repl. 1998), provides, in relevant part, that:

> (a)(1) When a decree is entered, the court shall make such orders concerning the alimony of the wife or the husband and the care of the children, if there are any, as are reasonable from the circumstances of the parties and the nature of the case. *Unless otherwise ordered by the court or agreed to by the parties*, the liability for alimony shall automatically cease upon the earlier of:
>
> (A) The date of the remarriage of the person who was awarded the alimony; or
>
> (B) The establishment of a relationship that produces a child or children and results in a court order directing another person to pay support to the recipient of alimony, which circumstances shall be considered the equivalent of remarriage; or
>
> (C) The establishment of a relationship that produces a child or children and results in a court order directing the recipient of alimony to provide support of another person who is not a descendant by birth or adoption of the payer of the alimony, which circumstances shall be considered the equivalent of remarriage.

(Emphasis added.)

At the outset, we acknowledge that this statute is not determinative because the parties provided for alimony in an incorporated agreement, instead of a "court order." This statute, however, is important to the resolution of this case because by using the words "[u]nless otherwise . . . agreed by the parties," the General Assembly clearly indicated that it is permissible for a divorcing couple to contractually agree to continue alimony even after one of the parties has children with another person and is obligated to pay child support. In light of this statute, we cannot

say that the Agreement in this case is contrary to Arkansas public policy.

Furthermore, we have continuously refused to allow parties to create a common-law marriage within the boundaries of this State. *Brissett v. Sykes*, 313 Ark. 515, 855 S.W.2d 330 (1993); *Fox v. Fox*, 247 Ark. 188, 444 S.W.2d 865 (1969). A *de facto* marriage is similar to a common-law marriage in that both are legal fictions created when the parties have not completed the formalities necessary for creating a legal marriage. *See* Ark. Code Ann. §§ 9-11-201 to 211 (Repl. 1988). If we recognized a *de facto* marriage, as the appellant suggests, we would actually be retreating from our well-established public policy of requiring a marriage license. Accordingly, we affirm the trial court's ruling that the Agreement did not violate public policy.

### III. Allocation of the support payment

Finally, the appellant contends that the trial court erred in dismissing his claim of relief, which requested that the monthly lump sum paid to appellee be apportioned into respective amounts for child support and alimony. The trial court denied this petition upon the finding that the appellant had waived such a claim and was estopped from raising the same because he had failed to do so in the 1985 hearing on the change of custody in which joint custody of the children was changed to sole custody of the appellant. The appellant continued to make the full payments until he filed a petition for termination of alimony in 1992. We, however, do not need to address the trial court's finding of waiver because a trial court's decision can be sustained if the ultimate decision is right even if the basis for that decision was incorrect. Stated differently, this court may sustain the decision upon a different basis. *Viswanathan v. Mississippi County Community College Bd. of Trustees*, 318 Ark. 810, 887 S.W.2d 531 (1994); *McNair v. McNair*, 316 Ark. 299, 870 S.W.2d 756 (1994); *Morrison v. Lowe*, 274 Ark. 358, 625 S.W.2d 452 (1981). Further, we held in *Ferguson v. Green*, 266 Ark. 556, 587 S.W.2d 18 (1979), that the fact that the chancellor based his decision upon an erroneous conclusion does not preclude the appellate court's reviewing the entire

case *de novo* and entering such judgment as the chancery court should have entered upon the undisputed facts in the record.

Appellee contends that the contract was for alimony alone. She contends that while support of the children was mentioned briefly in the Agreement, it only referred to maintenance and support of the children at such times as they were with the appellee, which was only during visitations, and that actual child support was never awarded nor intended. Therefore, because the Agreement was only for alimony, the court had and has no authority to modify said Agreement in any way.

Obviously, an ambiguity exists in the wording of the Agreement in the present case. Therefore, because such an ambiguity exists, we are permitted to look outside of the Agreement to determine the actual intent and conduct of the parties. We held in the case of *Wynn v. Sklar & Phillips Oil Co.*, 254 Ark. 332, 493 S.W.2d 439 (1973), that in arriving at the intention of the parties, the courts may consider and accord considerable weight to the construction of an ambiguous contract or deed by the parties themselves, evidenced by subsequent statements, acts, and conduct. *Citing Organized Sec. Life Ins. Co. v. Munyon*, 247 Ark. 449, 446 S.W.2d 233 (1969); *Schnitt v. McKellar*, 244 Ark. 377, 427 S.W.2d 202 (1968); *Arlington Hotel Co. v. Rector*, 124 Ark. 90, 186 S.W. 622 (1916).

Courts may also acquaint themselves with and consider circumstances existing at the time of the execution of a contract and the situation of the parties who made it. *Brown v. Windland*, 249 Ark. 6, 457 S.W.2d 840 (1970); *Schnitt v. McKellar, supra*. Further, pursuant to Ark. R. Civ. P. Rule 52, chancery cases are reviewed *de novo* and findings of fact will not be set aside unless "clearly erroneous." The review can be based upon a complete and independent review of the record. *See Thomas v. Thomas*, 246 Ark. 1126, 443 S.W.2d 534 (1969); *Keesee v. Keesee*, 48 Ark. App. 113, 891 S.W.2d 70 (1995); *Dodson v. Dodson*, 37 Ark. App. 86, 825 S.W.2d 608 (1992); *Andres v. Andres*, 1 Ark. App. 75, 613 S.W.2d 404 (1981). Therefore, an examination of the facts in this case is required.

As previously mentioned, the Agreement called for joint custody of the children. However, in her answers to a request for admissions promulgated by the appellant, the appellee admitted that her "three children with Winthrop Rockefeller have not lived with [her] since the divorce in 1978." Furthermore, the appellant did not decrease his monthly payments to the appellee after he was granted sole custody of the children on November 1, 1985.

The Agreement also specifically provides that the money paid to the appellee includes the maintenance of the children "when they are with her," and maintenance is defined as "food, lodging, entertainment, and other similar expenses, but does not include the cost of education, health care, or mutually agreed security." When asked about this contractual language, the appellant described these payments as "recreational expenses," and not as child support.

We are also persuaded by the way the appellant treated his monthly payments to the appellee on his income-tax returns. According to the Internal Revenue Code, amounts characterized as alimony or separate maintenance are income to the payee and deductible by the payor. *See* 26 U.S.C. §§ 71 and 251. Conversely, child-support payments are not deductible by the payor and are not taxable income to the payee. *See* 26 U.S.C. § 71(b). For "IRS" purposes, support is defined as "food, shelter, clothing, medical and dental care, education and the like." *See* 26 U.S.C. §§ 151, 152. For Arkansas income-tax purposes, neither payments for alimony nor child support are considered income for the payee nor are they deductible by the payor. *See* Ark. Income Tax Reg. 5.84—2008(2)(e).

In this case, the Agreement clearly provides that the entire amount paid by the appellant is to be treated as "alimony" for the purposes of his federal income-tax deductions and to be treated as income on the appellee's returns. Moreover, the appellant testified, during the February 12, 1993 hearing, that he deducted the entire amount of the payments to the appellee as alimony on his income-tax returns, and that he did not treat any portion of the payments as child support. It is fair to assume that the appellant was fully aware of the consequences of classifying such payments

solely as "alimony" when entering into the Agreement since he obtained the best possible tax situation for himself by doing so. Another important fact is that the appellant, through the Agreement, retained the right to claim all three children as his dependents.

Finally, the appellant admitted, during the February 12, 1993 hearing, that he continued to make the full monthly payments to the appellee even after he learned that she had two children with Mr. Padden.

▮▮▮ These facts lead us to the inescapable conclusion that the payments were solely intended as alimony. The trial court's denial of the petition for modification of the child-support amount could have been denied upon the basis that there was no provision for child support in the Agreement. Because the entire lump sum was obviously intended as alimony, the trial court was correct in denying the petition because it does not have the authority to modify an independent contract that is incorporated into the divorce decree.

▮▮▮ Further, appellee's motion seeking sanctions against the appellant for violation of the provisions of Ark. R. Civ. P. 11 is without merit and is denied.

Affirmed.

Special Justice KEITH WOOD joins in this opinion.

BROWN and IMBER, JJ., concur.

NEWBERN and THORNTON, JJ., not participating.

ANNABELLE CLINTON IMBER, Justice, concurring. I agree with the majority opinion, but write separately only to suggest that we may have conflicting precedent in two of the cases cited by the parties. Particularly, in *Bachus v. Bachus*, 216 Ark. 802, 227 S.W.2d 439 (1950) and *Nooner v. Nooner*, 278 Ark. 360, 645 S.W.2d 671 (1983), *overruled on other grounds, Gould v. Gould*, 308 Ark. 213, 823 S.W.2d 890 (1992), we have reached different conclusions as to whether a chancery court may divide a lump-sum payment of alimony and child support that is contained in an incorporated agreement. Although the resolution of this

issue is not relevant to the case at hand because we have concluded that the entire monthly payment was alimony, it is important to note that we have not been consistent on this matter.

In *Bachus v. Bachus, supra*, the parties entered into an agreement whereby the husband agreed to pay the wife $200 a month "as alimony and support for their four children." The chancellor approved the agreement and incorporated it into the divorce decree. *Id.* Soon thereafter, the trial court reduced the lump-sum payment to $150 a month due to changed circumstances. *Id.* On appeal, we held that:

> The court erred in reducing the amount of the monthly payments. The parties to a divorce action may agree upon the alimony or maintenance to be paid. Although the court is not bound by the litigants' contract, nevertheless if the court approves the settlement and awards support money upon that basis there is then no power to modify the decree at a later date. *McCue v. McCue*, 210 Ark. 826, 197 S.W.2d 938. If changed circumstances should subsequently render the payments inequitable the court may decline to enforce by contempt proceedings the payment of a greater sum than the circumstances warrant, thereby remitting the plaintiff to her remedy at law to collect the balance due under the contract. *Pryor v. Pryor*, 88 Ark. 302, 114 S.W. 700, 129 Am. St. Rep. 102.

*Id.* Although we did not expressly so hold, we implied in *Bachus* that the trial court did not have the authority to determine how much of the lump-sum payment was for child support and then reduce that portion due to changed circumstances.

Since *Bachus* was decided in 1950, we have consistently held that an incorporated agreement regarding alimony cannot be modified by the chancery court. *See, e.g., Seaton v. Seaton*, 221 Ark. 778, 255 S.W.2d 954 (1953); *Hodge v. Hodge*, 241 Ark. 712, 409 S.W.2d 316 (1966); *Law v. Law*, 248 Ark. 894, 455 S.W.2d 854 (1970); *Powell v. Pearson*, 251 Ark. 1107, 476 S.W.2d 802 (1972); *Kersh v. Kersh*, 254 Ark. 969, 497 S.W.2d 272 (1973); *Songer v. Songer*, 267 Ark. 1075, 594 S.W.2d 33 (1980). In contrast, we have firmly held that the chancery court always has jurisdiction to modify child support and custody even if the parties have entered into an incorporated agreement on the subject. *See,*

*e.g., Lively v. Lively,* 222 Ark. 501, 261 S.W.2d 409 (1953); *Reiter v. Reiter,* 225 Ark. 157, 278 S.W.2d 644 (1955); *Johnston v. Johnston,* 241 Ark. 551, 408 S.W2d 885 (1966). Specifically, in *Lively,* we said that "the power of a court to modify a decree for the support of minor children cannot be defeated by an agreement between the parents even when the agreement is incorporated in the decree." *Lively, supra.* The issue then became whether, as in *Bachus,* a chancellor may segregate a lump-sum payment of alimony and child support contained in an incorporated agreement and then reduce the portion attributable to child support due to changed circumstances. *Bachus* seemed to indicate that such action was not permissible.

In *Collie v. Collie,* 242 Ark. 297, 413 S.W.2d 42 (1967), the parties entered into an agreement that required the father to pay $150 a month alimony and $7000 a year child support. The chancellor incorporated the agreement into the divorce decree. *Id.* Seven months later, the father sought modification of both the alimony and child-support arrangements due to changed circumstances. *Id.* We held that alimony could not be reduced because the agreement was incorporated, and that child support could not be reduced because the father failed to prove any changed circumstances. *Id.* We then said that:

> It has been held by this court that when an independent, formal, written contract for alimony and child support has been approved by the chancellor and incorporated in the decree, the trial court has no jurisdiction to reduce the amount of monthly payments provided for or to modify the decree at a later date. *Bachus v. Bachus,* 216 Ark. 802, 227 S.W.2d 439. The cited case recognized, however, that a chancery court might decline to use its powers to enforce such payments where changed circumstances rendered such inequitable, leaving the parties to their remedy at law. Later decisions have held that the court has power to modify a divorce decree as to provisions for support of minor children on the showing of changed conditions necessitating such a modification, by either increasing or reducing such amounts. *Lively v. Lively,* 222 Ark. 501, 261 S.W.2d 409. Any apparent conflict in these cases is probably attributable to the fact that the alimony and child support were not provided for separately in the *Bachus* case, but child support was a separate item in the *Lively* case. *See*

*Reiter v. Reiter*, 225 Ark. 157, 278 S.W.2d 644. *At any rate we think that the better rule is that a chancery court may withhold enforcement of the payment of child support payments that have become inequitable by change of circumstances and the court may either reduce or increase amounts of child support payments provided for by such agreements because of changed circumstances. The interests of minors have always been the subject of jealous and watchful care by courts of chancery. Myrick v. Jacks,* 33 Ark. 425; *Crenshaw v. Crenshaw,* 203 Ark. 1086, 160 S.W.2d 37. The public interest in the welfare of children is sufficient reason for the exercise of this power, the interests of the children being paramount. *Daily v. Daily,* 175 Ark. 161, 298 S.W. 1012; *Penny v. Penny,* 210 Ark. 16, 193 S.W.2d 811; *Reiter v. Reiter,* 225 Ark. 157, 278 S.W.2d 644.

*Id.* (emphasis added). Admittedly, the emphasized language regarding a chancellor's authority to divide a lump-sum payment and modify child support is mere dicta because we concluded that there were no changed circumstances proved in this case that justified a reduction in child support. However, the emphasized language clearly indicates a displeasure with the *Bachus* rule because it circumvents our well-established policy of allowing modification of child-support agreements.

We addressed the issue a final time in *Nooner v. Nooner,* 278 Ark. 360, 645 S.W.2d 671 (1983). In *Nooner,* the parties entered into an agreement, which was later incorporated into the divorce decree, requiring the husband to pay "the sum of $100 per week for support of the wife and two children for the life of the husband." *Id.* Because the agreement was incorporated into the decree, we held that the trial court could not modify the amount of the lump-sum payment that was attributable to alimony. However, as to the amount attributable to child support, we said:

> The Court always retains jurisdiction over child support, as public policy. No matter what an independent contract states, either party has a right to ask for a change in child support. In this case where alimony and child support were not separately stated, the appellant can ask the Chancery Court to make a determination as to how much of the $100 is child support and how much is alimony.

*Id.* Unfortunately, we did not attempt to reconcile this case with our holding in *Bachus, supra.* Furthermore, since *Nooner* was handed down in 1983, we have not spoken again concerning whether a trial court may divide a lump-sum payment that is incorporated into the divorce decree and then modify the amount attributable to child support due to changed circumstances. Specifically, we have not yet addressed the apparent discrepancy in the *Bachus* and *Nooner* holdings.

In contrast, the Court of Appeals has wrestled with this issue on several occasions. In most cases, the Court of Appeals has concluded, albeit in dicta, that the chancery court has the *legal authority* to determine how much of a lump-sum agreement is child support and then modify that portion of the incorporated agreement. *See, e.g., Terry v. Terry,* 28 Ark. App. 169, 771 S.W.2d 321 (1989); *Crow v. Crow,* 26 Ark. App. 37, 759 S.W.2d 570 (1988). However, in some cases the Court of Appeals concluded that child support was so intermingled with the other terms of the property agreement that it could not be *factually separated* from the remaining portions of the incorporated agreement. *See, e.g., Reeves v. Reeves,* 21 Ark. App. 177, 730 S.W.2d 904 (1987); *Hunter v. Hunter,* 13 Ark. App. 204, 681 S.W.2d 424 (1985); *McInturff v. McInturff,* 7 Ark. App. 116, 644 S.W.2d 618 (1983).

To say the least, the law in Arkansas is not well developed as to the discrete issue of whether a trial court may divide a lump-sum payment for child support and alimony that is contained in an incorporated decree and then reduce the child-support payments due to changed circumstances. However, as mentioned previously, the reconciliation of *Bachus* and *Nooner* will have to wait for another day because the agreement in the case before us today only involved alimony payments.

BROWN, J., joins in this concurrence.